# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

––––––––––––––––––––

Nº 05-CV-2851 (JFB) (ETB)

––––––––––––––––––––

## HARRISON-HOGE INDUSTRIES, INC.,

Plaintiff and
Counterclaim Defendant,

VERSUS

## PANTHER MARTIN S.R.L.,

Defendant and
Counterclaim Plaintiff,

AND

## AKUA, S.R.L.

Defendant.

––––––––––––––––––

MEMORANDUM AND ORDER
March 31, 2008

––––––––––––––––––

JOSEPH F. BIANCO, District Judge:

Plaintiff Harrison Hoge Industries Inc. (Hereinafter, "HHI" or "plaintiff") brought the instant action for trademark infringement, confusion, unfair competition, copyright infringement, breach of contract, intentional interference with a contract and breach of the duty of good faith and fair dealing. Defendants Panther Martin S.r.l. and Akua S.r.l. ("Panther Martin" and "Akua" or

"defendants") have counterclaimed, alleging breach of contract, trademark infringement, and false designation of origin. Defendants further requested a declaratory judgment as to trademark ownership.

Plaintiff moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants cross-move for summary judgment pursuant to Rules 54(b) and 56. For the reasons stated below, plaintiff's motion for summary judgement is

denied. Defendants' cross-motion for summary judgement is granted in part and denied in part.

## I. Background

The Court has taken the facts described below from the parties' depositions, affidavits, exhibits, and respective Local Rule 56.1 statements of facts submitted by the parties. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

### A. Facts

Plaintiff HHI is a second generation, family-owned business located in Port Jefferson, New York (Plaintiff's 56.1 Statement of Undisputed Facts (hereinafter, "Pl.'s 56.1") ¶¶ 1, 7.) HHI has been in the business of manufacturing and marketing fishing lures and other fishing equipment for wholesale and retail distribution since at least 1956. (Pl.'s 56.1 ¶ 3.) HHI is considered to be one of the premier companies in the fishing lure industry. (Pl.'s 56.1 ¶ 14.) HHI sell lures that it either manufactures itself or that it contracts with third party manufacturers to produce. HHI claims to own and use three main trademarks to identify its fishing lures and business, and prominently displays such trademarks in its advertising, on its website, and on its products. These trademarks are: Panther Martin, Animal Logo, and The Greatest Fish Catcher of All Time. (Pl.'s 56.1 ¶ 16.)

Defendants claim that they own the Panther Martin mark and that HHI has no right to claim ownership. (Def.'s Response to Pl.'s 56.1 ¶ 16.) Defendants assert that Stanislao Kuckiewicz, a Polish fisherman, invented and patented the spinning fishing lure manufactured and sold by Pozzi & Canegrati s.d.f. (Defs.' 56.1 ¶ 1.) Plaintiff does not dispute that Kuckiewicz patented a type of spinning fishing lure and that Pozzi & Canegrati s.d.f. sold these lures under its Martin trademark. However, plaintiff does dispute that these lures were called "Panther Martin" lures by Pozzi & Canegrati. (Pl.'s response to Defs.' 56.1 ¶ 1.) Plaintiff further disputes that these were the only types or style of fishing lures sold under the "Panther Martin" trademark. (*Id.*) Defendants assert that the Panther Martin lures were subsequently sold by Pozzi & Canegrati s.n.c. and Simplex s.r.l., which changed its name to Panther Martin s.r.l. (Defs.' 56.1 ¶ 2.) Plaintiff contends that Pozzi & Canegrati sold its lures under the Martin and Simplex trademarks that it owned and registered in Italy. Plaintiff further contends that the lures that Pozzi & Canegrati sold to HHI in the United States had the USPTO-registered Martin trademark. (Aff. of Cecil Hoge, Jr., Ex. 79.) Plaintiff points to an article in Il Pescatore about Simplex, in which the article refers to the lures sold by Pozzi & Canegrati and Simplex as being "Martin," not "Panther Martin." (*Id.*)

Defendants assert that Pozzi & Canegrati s.d.f., a de facto partnership, was founded in 1936 and registered with the Milan Chamber of Commerce. (Defs.' 56.1 ¶ 3.) Plaintiff disputes this fact and points to the Il Pescatore article about the history of Simplex lures that states that Pozzi & Canegrati was formed in 1938. (Pl.'s Response to Def.'s 56.1 ¶ 3.) Plaintiff also notes that the article does not indicate whether the partnership was registered with any Chamber of Commerce.

(*Id.*) In 1938, Pozzi & Canegratti acquired the rights to the Panther Martin lures from Stanislao Kuckiewicz. (Defs.' 56.1 ¶ 4.)[1]

Defendants assert that, prior to 1961, Pozzi & Canegrati sold its lures, embossed with the Panther + Martin mark, to its United States distributor, Rockland Tackle Co. ("Rockland Tackle") (Defs.' 56.1 ¶ 11.) Plaintiff argues that defendants have neither produced nor cited any admissible evidence that Rockland Tackle Co. was a distributor of Pozzi & Canegrati, as opposed to an independent manufacturer and importer of fishing lures that it sold under its own name. (Pl.'s Response to Defs.' 56.1 ¶ 11.) Plaintiff assets that the Panther Martin trademark is registered to HHI by the USPTO. (*Id.*) Plaintiff further argues that defendants have produced and cited no evidence that the Panther Martin Trademark as registered by the USPTO was ever used by Pozzi & Canegrati s.d.f. (*Id.*) Plaintiff also contends that defendants have produced no evidence that any lure that Pozzi & Canegrati s.d.f. has sold to any company in the United States or anywhere else in the world has ever had HHI's USPTO-registered Panther Martin trademark on it. (*Id.*) Defendants assert that Panther Martin has been producing the Panther Martin lures continuously for almost 70 years. (Defs.' 56.1 ¶ 5.) Plaintiff contends that defendants have neither produced nor cited to evidence that shows that Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., or Simplex s.r.l. ever used the Panther Martin trademark on their products. (Pl.'s Response to Defs.' 56.1 ¶ 5.) Plaintiff further asserts that defendants have neither produced nor cited any evidence that Pozzi & Canegrati ever used the Panther Martin trademark prior to 1958. (*Id.*) Plaintiff points to the USPTO trademark records- and Defendants' own documents – and allege that Pozzi & Canegrati first used the Martin – not the Panther Martin – trademark in the United States in 1958. (*Id.*) Plaintiff further points to the history provided in the Il Pescatore article that states that Pozzi & Canegrati and Simplex made and sold spoon blade lures under the names of "Simplex, Ardito, Terrible, Splendex and the magical Martin" but did not reference either company ever making lures that they sold under the name Panther Martin. (Cecil Hoge, Jr. Aff., Ex. 79.) Defendants contend that Panther Martin embossed the image of a panther and the word "Martin" (the "Panther + Martin Mark"), Panther Martin's U.S. Trademark Number and "Italy" on Panther Martin lures. (Defs.' 56.1 ¶ 5.) "Martin" is the Italian name for the kingfisher, a bird known for its fishing prowess. (Defs.' 56.1 ¶ 8.) Defendants assert that the image of a panther was chosen due to the panther's ability to catch prey. (Def.'s 56.1 ¶ 7.) Defendants contend that the Panther Martin mark is derived from Panther Martin's Panther + Martin mark and that the Panther + Martin mark is recognized by customers in the United States. (Defs.' 56.1 ¶ 9.) Plaintiff asserts that USPTO records do not show that the image included by Defendants in the Martin trademark is a panther and defendants have introduced and cited no evidence to that effect. (Pl.'s Response to Defs.' 56.1 ¶ 6.) Plaintiff points to the USPTO records that show that the image accompanying the Martin trademark falls within the category of 02.01.08 - dogs; puppies and 03.01.24 - stylized cats, dogs, wolves, foxes, bears, lions, tigers. (*Id.*) Plaintiff notes that the USPTO

---

[1] Plaintiff notes that there is no indication of whether Pozzi & Canegrati s.d.f. or Pozzi & Canegrati s.n.c. allegedly acquired these rights. (Pl.'s Response to Defs.' 56.1 ¶ 4.)

does not use the term "panther" to describe the drawing. (Danas Supp. Dec. Exh. F.) Plaintiff also notes that the 2005 Il Pescatore article refers to Angelo Pollastri adopting the Martin name some time after 1946 without reference to any figure of an animal, let alone a panther. (Cecil Hoge, Jr. Aff. Ex. 79.)

Plaintiff claims to have acquired the Panther Martin trademark in 1961 when it purchased Rockland Tackle, a company which sold fishing lures under the Panther Martin trademark. (Pl.'s 56.1 ¶ 25.) Defendants dispute that HHI purchased the Panther Martin trademark/trade name from Rockland Tackle. (Hoge Aff. Ex. 3.) Defendants further assert that these lures were Pozzi & Canegrati lures sold under the Panther Martin name. (Defs.' 56.1 ¶ 12.) It is undisputed that Rockland Tackle did not register the name Panther Martin as a trademark. (Defs.' 56.1 ¶ 13.) Plaintiff does not dispute that some of the fishing lures that Rockland Tackle independently sold under the name Panther Martin were purchased by it from Pozzi & Canegrati s.d.f. (Pl.'s response to Defs.' 56.1 ¶ 12.) Plaintiff does dispute the implication that Rockland Tackle limited its use of its Panther Martin Trademark to only those lures made by Pozzi & Canegrati. (Pl.'s response to Defs.' 56.1 ¶ 14.) Further, Defendants assert that Rockland Tackle was Pozzi & Canegrati s.d.f.'s distributor in the United States, and had no ownership rights in Pozzi & Canegreti s.d.f.'s Panther Martin mark. (Nahum Decl. ¶ 16.) Defendants also contend that HHI's affiliate, Harrison Tackle, acted as Pozzi & Canegrati's exclusive Canadian distributor. (Defs.'s 56.1 ¶ 16.) Plaintiff asserts that defendants have produced no evidence that Harrison Tackle was a distributor for Pozzi & Canegrati as opposed to an independent importer of fishing lures. (Pl.'s Response to Defs.' 56.1 ¶ 17.)

After HHI's alleged acquisition of Rockland Tackle, HHI claims that it expanded the use of the Panther Martin trademark to include retail sales in the field of fishing equipment, as well as an Animal Logo trademark for fishing lures and retail sales of fishing equipment. (Pl.'s 56.1 ¶ 29.) HHI routinely sends its distributors catalogs and sample products as part of its advertising and promotional scheme. Defendants note that HHI's catalogs reflect that the only connection with the Panther Martin mark are the Panther Martin spinning Lures through the 1980's and 1990's. (Mertzel Decl. Ex. 5-28.) In February of 1961, HHI began using the Animal Logo trademark for fishing lures and retail sales of fishing equipment. (Pl.'s 56.1 ¶ 30.) Since Plaintiff's alleged acquisition of Rockland Tackle, HHI has, without interruption, marketed, advertised, distributed, and sold fishing lures and other products under the trademark Panther Martin. (Pl.'s 56.1 ¶ 40.) HHI markets a number of different styles of fishing lures under the Panther Martin, Animal Logo, and The Greatest Fish Catcher of All Time trademarks. These include, but are not limited to: Panther Martin spinner; Panther Martin Vivifs; Panther Martin Minnows; Panther Martin Frogs; Panther Martin Weedwings; and Panther Martin Stinky Shrimp. (Pl.'s 56.1 ¶ 83.) Further, HHI also offers a variety of promotional items in connection with its sale and advertisement of fishing lures and fishing equipment including, for example, caps given to customers who made purchases on their Internet website, patches for attachment to clothing, and fishing guides featuring the Lures using the Panther Martin Trademark. (Pl.'s 56.1 ¶ 79.)

Defendants assert that HHI sold several brands of lures including Vivifs, Johnny O'Neil's Weedwing, Bill Plummer's Skitter Frogs, Bass Frog, Harrison's Rocky lures, and "Italy's most famous fishing lure Panther Martin." (Def.'s 56.1 ¶ 20.) HHI did not invent Johnny O'Neil's Weedwing lure and, in fact, paid royalties to Johnny O'Neil in connection with sales of Weedwing lures. (Def.'s 56.1 ¶ 21.) HHI claims trademark rights in Weedwings. (Def.'s 56.1 ¶ 23.) HHI did not invent the Skitter Frog lure, Bass frog lure and paid royalties to Bill Plummer in connection with the sales of these lures. (Def.'s 56.1 ¶¶ 24, 25.) HHI did not invent the Harrison's Rocky lures and purchased the company that sold Harrison's Rocky lures. (Def.'s 56.1 ¶ 26.)

HHI did not invent the Vivif lure and purchased Vivif lures directly from the French manufacturer. (Def.'s 56.1 ¶ 27.) Defendants assert that HHI did not manufacture Vivif lures. (Def.'s 56.1 ¶ 28.) Plaintiff, however, contends that HHI contracted with other manufacturers, including Aitken Warner and Hong Kong Yat Tai, to manufacture Vivif lures. (Cecil Hoge Jr. Aff.; Thomas Cho Aff.) HHI did not originate the name Vivif. (Def.'s 56.1 ¶ 29.) HHI never registered the name Vivif as a trademark. (Def.'s 56.1 ¶ 30.) Plaintiff contends that HHI markets the Vivif lure using HHI's registered Panther Martin trademark. Plaintiff further contends that the Vivif lure is recognized as one of the "most legendary Panther Martin lures." (Cecil Hoge, Jr., Supp. Aff.) The French company that manufactured Vivif lures went out of business. (Def.'s 56.1 ¶ 31.) HHI claims trademark rights in the name Vivif. (Def.'s 56.1 ¶ 32.)

HHI claims that in the late 1960s or early 1970s, HHI began to use Panther Martin as a business name for Harrison Hoge Industries. Defendant counters that there is no evidence in the record for HHI's use of Panther Martin as a business name in the late 1960s and early 1970s. (Mertzel Decl. Ex 5-28.) Defendant cites to HHI's catalogs which used Harrison Hoge Industries as its business name. (Mertzel Decl. Ex. 5-28.) HHI claims that by the 1980s it also referred to its fishing lure line of business as the "Panther Martin Division of Harrison Hoge Industries," to distinguish it from HHI's other lines of business. (Pl.'s 56.1 at ¶ 86.) Defendents counter that, after the 1990 catalog, HHI did not again refer to the "Panther Martin Division" of HHI in its catalogs (Mertzel Decl. Ex 18-27), did not consistently use Panther Martin as a business name, and continued to distinguish between Panther Martin lures and other lures HHI distributed at least until June 6, 2005, as seen on the "About Us" page of HHI's website. (Nahum Decl. Ex. 9.)

Defendants assert that HHI did not invent the Panther Martin lure. (Defs.' 56.1 ¶ 33.) Plaintiff claims that from 1961 until 2005, some of the fishing lures that HHI sold under its Panther Martin, Animal Logo, and The Greatest Fish Catcher of All Time trademarks were purchased from a series of three Italian companies located in Milan, Italy. (Pl.'s 56.1 ¶ 120.) Defendants dispute that HHI purchased lures from a series of three different Italian companies located in Milan. Defendants assert that Pozzi & Canegrati s.d.f. and Pozzi & Canegratti s.n.c. were not different companies. (Costanza Decl. Ex. A at 3-5; Declaration of Giovanni Guglielmetti in Support of Plaintiff Harrison Hoge Industries, Inc.'s Motion for Summary Judgment Ex.C at HHI 127). Defendants also assert that HHI

paid royalties to Dave Romeo and Brett Kennedy in connection with sales of painted Panther + Martin lures. (Defs.' 56.1 ¶¶ 35, 36.) Plaintiff contends that it contracted with and paid royalties to Dave Romeo in connection with HHI's hiring him to design new colors and styles of lures that HHI had manufactured and sold under the Panther Martin trademark. (Cecil Hoge, Jr. Aff.)

Defendants point out that HHI recognized Panther Martin as the same Company HHI had been dealing with for "almost 50 years." To support this assertion defendants cite to an e-mail from Cecil Hoge to Daniel Nahum in which Hoge wrote "Dear Lelio and Daniel - For almost 50 years our two companies have mutually benefitted from our profitable relationship." (Costanza Decl. Ex. A at Ex. 7.)

Commencing in 1961, pursuant to oral agreements and purchase orders, HHI began purchasing fishing lures from Pozzi & Canegrati s.d.f. (Pl.'s 56.1 ¶ 124.) Rockland Tackle had been purchasing lures from Pozzi & Canegrati. (Pl.'56.1 ¶ 125.) The fishing lures bought by HHI from Pozzi & Canegrati s.d.f. in Italy and other countries were sold by Pozzi & Canegrati s.d.f. under the "Martin" trademark. (Pl.'s 56.1 ¶ 126.) The "Martin" trademark consists of the word "Martin" with the stylized symbol of an animal. (Pl.'s 56.1 at ¶ 127.) Plaintiff asserts that the stylized symbol of an animal in the "Martin" trademark is entirely different and distinct from the Animal Logo created and used by HHI. (Pl.'s 56.1 ¶ 128.) Defendants, however, contend that the animals used in Panther + Martin mark is similar to the Animal Logo, in that both marks use a panther. (Nahum Decl.¶ 5.) In fact, defendants assert that since at least 1962,

Pozzi & Canegrati granted HHI and its predecessors exclusive rights for distributing and advertising Panther Martin lures in the United States, their territories, and possessions. (Defs.' 56.1 ¶ 37.) Plaintiff asserts that the defendants have produced no evidence showing any agreement between HHI and Pozzi & Canegrati for HHI to act as an agent or distributor as opposed to an exclusive buying agreement. (Pl.'s response to Defs.' 56.1 ¶ 37.)

In 1972, Pozzi & Canegrati s.d.f. registered "Martin" as a trademark in Italy. (Pl.'s 56.1 ¶ 139.) This "Martin" trademark was used and stamped on the blades of the fishing lures that it produced and sold to HHI. (*Id.*) Plaintiff claims that prior to and on May 16, 1973, Pozzi & Canegrati sdf had never used the Panther Martin trademark in either Italy or anywhere else in the world. (Pl.'s 56.1 ¶ 140.) Plaintiff asserts that during its existence, Pozzi & Canegrati sdf never registered the Panther Martin, Animal Logo, or The Greatest Fish Catcher of All Time trademarks with any governmental authority anywhere in the world. (Pl.'s 56.1 ¶ 143.) Defendants, however, assert that the Panther Martin Mark was used with Pozzi & Canegrati's knowledge and permission to identify Pozzi & Canegratti's lures embossed with the Panther + Martin Mark in the United States since at least 1958. (Nahum Decl. ¶ 16.) In a letter dated May 16, 1973, Pozzi & Canegrati s.d.f. stated as follows:

> We also have registered the trade-name "Panther Martin" hoping that this could value even in your country. Unfortunately the registration made in Italy has no value for U.S.A. So we agree to give

you the Esclusive [sic] right of selling "Spinner Martin" in all your U.S.A., and to authorize you to deposit and register [sic] with trade-man our "Spinner Martin Panther" with the clause il [sic] you will stop to sell the P.M. in U.S.A., we will be free to sell again our P.M. in all U.S.A.

(Defs.' 56.1 ¶ 38.)

In 1974, HHI filed an application to register the Panther Martin trademark with the United States Patent and Trademark Office (hereinafter "USPTO"). (Pl.'s 56.1 ¶ 144.) In 1974, Pozzi & Canegrati s.d.f. filed an application to register its "Martin" trademark with the USPTO. (Pl.'s 56.1 ¶ 145.) Pozzi & Canegrati s.d.f. never objected to HHI's application to register the Panther Martin trademark with the USPTO. (Pl.'s 56.1 ¶ 146.) Defendants assert that HHI's registration of the Panther Martin mark was made with Panther Martin's express permission. (Defs.' 56.1 ¶ 41.) Plaintiff asserts that defendants have produced no evidence showing that HHI received permission from Pozzi & Canegrati to register HHI's Panther Martin trademark with USPTO. (Pl.'s response to defs.' 56.1 ¶ 41.) Plaintiff further asserts that the May 16, 1973 letter clearly refers to the Martin trademark used by Pozzi & Canegrati. (Cecil Hoge, Jr. Aff.)

In 1975, the USPTO registered Pozzi & Canegrati s.d.f.'s "Martin" trademark in the United States. (Pl.'s 56.1 ¶ 147.) Defendants, however, assert that Pozzi & Canegrati registered the Panther + Martin mark with the USPTO. (Defs.' 56.1 ¶ 42.) Plaintiff,

however, contends that defendants have provided no evidence that the trademark that Pozzi & Canegrati registered with the USPTO was the "Panther + Martin" trademark. (Pl.'s response to defs.' 56.1 ¶ 42.) Plaintiff further asserts that the USPTO records do not show that the image included by defendants in their Martin trademark is a panther. Plaintiff points out that the USPTO records show that the image accompanying the Martin trademark falls within the category 03.01.08 - dogs; puppies and 03.01.24 - stylized cats, dogs, wolves, foxes, bears, lions, tigers. (*Id.*) Plaintiff further notes that the USPTO does not use the term "panther" to describe the drawing.

In March 1979, HHI and Pozzi & Canegrati s.d.f. entered into an agreement dated March 26, 1979 which gave HHI exclusive worldwide rights to buy and sell Pozzi & Canegrati s.d.f.'s products bought and sold by HHI under the name Panther Martin. (Pl.'s 56.1 ¶ 149.) Defendants further assert that this agreement gave HHI exclusive worldwide rights to market Pozzi & Canegrati s.d.f.'s products under Pozzi & Canegrati s.d.f.'s Panther Martin Mark. (Defs.' 56.1 ¶ 43.) Plaintiff, however, contends that defendants have produced no evidence to show that Pozzi & Canegrati s.d.f. has ever owned or used HHI's Panther Martin mark. (Pl.'s Response to Def.'s 56.1 ¶ 43.) The March 26, 1979 letter agreement was drafted by HHI, except for the following addition added by Pozzi & Canegrati: "N.B. – we want to define precisely that this agreement regard only the metal bait denominated Panther Martin." (Defs.' 56.1 ¶ 44.) Plaintiff notes that the agreement was with Pozzi & Canegrati s.d.f. and that the "N.B." is not an indication that Pozzi & Canegrati s.d.f. owned the Panther Martin trademark, but merely

indicates the lures that HHI was choosing to buy defendants. (Cecil Hoge, Jr. Aff.)

HHI and Pozzi & Canegrati s.d.f. also entered into a written agreement dated March 30, 1979 in which Pozzi & Canegrati s.d.f. gave HHI the exclusive right to purchase and sell in the United States fishing lures manufactured by Pozzi & Canegrati s.d.f. (Pl.'s 56.1 ¶ 150.) The contract states that "the parties now intend to ratify their past relations." (Defs.' 56.1 ¶ 46.) In pertinent part the March 30, 1979 contract states:

- POZZI[2] is engaged in the manufacture and sales of artificial Lures called "Panther Martin" hereinafter called "Lures"), and carries out this activity in the city of Milan (Italy), where it has its legal residence under the laws of Italy.

- HOGE is engaged in, among other things, the importation, sales, promotion and advertising of said Lures, of various types, colours and, dimensions.

- since June 1962 and earlier POZZI has orally granted, and confirmed in writing a letter dated 16th May 1973, as can be seen from prior correspondence, to HOGE (and previously to Hanison Industries inc. to Harrison Home Products Corp and to Tackle Trading Corp. To which HOGE succeeded), the exclusive rights for importing to the United States, their territories and

possessions, Canada Excluded Lures of its own production, imported, sold, promoted and advertised by HOGE and by the other companies referred to above under the name of PANTHER MARTIN (hereinafter called Lures) in all their various types, colours and dimensions.

(Pl.'s 56.1 ¶ 154.)

The contract further states that: (1) Pozzi & Canegrati "is the holder of the trade mark 'Panther Martin'" (Defs.' 56.1 ¶ 49); (2) "HOGE undertakes to do its utmost to increase the sales of Lures in the United States and to increase the volume of its purchases of said Lures from Pozzi" (Defs.' 56.1 ¶ 52); (3) it "ratifies all the agreements made between the parties and may not be modified unless by the appropriate instrument signed by both parties" (Defs.' 56.1 ¶ 53); (4) "the rights and obligations ratified by the present contract are now understood to be extended to possible heirs, executors, administers, successors or assignees of both parties" (Defs.' 56.1 ¶ 55); (5) "the parties have agreed to the purchase of HOGE of the above finished Lures for the exclusive sales and distribution of the same by HOGE in the United States, their territories and possessions" (Defs.' 56.1 ¶ 56); (6) "[i]f for reasons of force majeure e.g. war, strikes, flooding, [sic] etc. POZZI is unable to make deliveries within 120 days from the consignment date confirmed by POZZI, HOGE shall have the right to manufacture or have other[s] manufacture the Lures ordered, in this case paying to POZZI a royalty of 5% on the related net sales" (Defs.' 56.1 ¶ 58); (7) it "shall remain in force as long as HOGE continues to sell the Lures in the territories indicated and for the period that shall subsequently be specified. Should said sales

---

[2]Plaintiff indicates that "Pozzi" is a reference to Pozzi & Canegrati s.d.f. (Pl.'s response to Defs.' 56.1 ¶ 48.)

terminate, HOGE shall grant to POZZI the rights for the commercial denomination of the Lures and shall hand back the exclusive sales rights granted to HOGE" (Defs.' 56.1 ¶ 59); and (8) "[t]he present contract shall be interpreted and applied according to the laws of procedures of the State of New York and the Italian Republic; in the case of discrepancy between the two interpreting resources shall be made to arbitration which shall be exercised according to the standards of the Commercial Arbitration Society of the State of New York or alternatively by the corresponding Italian body" (Defs.' 56.1 ¶ 60.) The 1979 Contract states that "Pozzi. . . . authorizes [sic] HOGE to deposit in its own name the trademark 'PANTHER-MARTIN' at the United States Patent Office." (Defs.' 56.1 ¶ 57.) Plaintiff indicates that this quotation is misleading because key language is not included. (Pl.'s response to defs.' 56.1 ¶ 57.) Defendants assert that the Italian translation of the 1979 Contract states that Pozzi & Canegrati is the "titolare" of the Panther Martin trademark. (Defs.' 56.1 ¶ 50.[3]) The 1979 does not contain any provision prohibiting assignment. (Defs.' 56.1 ¶ 54.) Walter Bressan and Angelo Pollastri signed the 1979 Contract for and in the name of Pozzi & Canegrati, a *de facto* company. (Defs.' 56.1 ¶ 61.)

As of March 30, 1979, Pozzi & Canegrati s.d.f. had registered the "Martin" trademark in both the United States and in Italy. However, Pozzi & Canegrati s.d.f. never registered the "Panther Martin" trademark anywhere in the world. (Pl.'s 56.1 ¶¶ 159, 160.) Plaintiff claims that, as of March 30, 1979, Pozzi & Canegrati s.d.f. never used the Panther Martin

trademark. (Pl.'s 56.1 ¶ 161.) Defendants assert, however, that the Panther Martin trademark was used with Pozzi & Canegrati's knowledge and permission to identify Pozzi & Canegrati's lures embossed with the Panther Martin mark in the United States beginning at least as early as 1958. (Hoge Aff. Ex.4 at HH 021487; C. Hoge Dep. 57:2-5; Nahum Decl. at ¶ 16.) Plaintiff asserts that the March 1979 agreement contains no provision requiring HHI to transfer or otherwise assign its existing 1975 USPTO registration of the Panther Martin trademark to Pozzi & Canegrati s.d.f. (Pl.'s 56.1 ¶ 162.) Defendants, however, point to a provision in the 1979 contract which states that "[s]hould said sales terminate, HOGE shall grant to Pozzi the rights for the commercial denomination of the [PANTHER MARTIN] lures. . . ." (Nahum Decl. Ex. 7.) Plaintiff further asserts that the March 1979 contact contains no provisions giving Pozzi & Canegrati s.d.f. the right to control, specify, review, approve, or reject HHI's use of the Panther Martin trademark, including, but not limited to, HHI's use of the Panther Martin trademark in any aspect of HHI's business, including, but not limited to, HHI's advertising, products, or packaging. (Affidavit of Cecil Hoge, Jr., including ¶¶ 181-201; Pl.'s Summ. J. Exh. 47.)

Plaintiff claims that HHI interpreted the March 30, 1979 agreement as a recognition by Pozzi Canegrati s.d.f. of HHI's exclusive ownership of the Panther Martin trademark, which has been owned and used by HHI since 1961 and was already registered with the USPTO as of 1975. (Pl.'s 56.1 ¶ 169.) Defendants assert, however, the 1979 contract says nothing that could reasonably be interpreted as recognizing HHI's exclusive ownership of the Panther Martin mark. Further, defendants assert that the 1979 Contract expressly states that Pozzi &

---

[3]Plaintiff disputes defendants ability to authenticate the document.

Canegrati is "the holder of the trademark 'Panther Martin.'" (Nahum Decl. Ex. 7.) Moreover, defendants point to a letter dated December 14, 1979, in which Cecil Hoge wrote to Walter Bressan & Angelo Pollastri, owners of Pozzi & Canegrati s.d.f. stating: "[w]e would never simply produce Panther Martins without paying you a royalty on each Panther Martin we made. . . . We would expect that any Panther Martin lures we produce. . . . would be done so with your permission. . . ." (Nahum Decl. Ex. 10.) Plaintiff claims that, based upon their understanding of the March 1979 agreement, HHI continued to purchase fishing lures from Pozzi & Canegrati s.d.f. (Pl.'s 56.1 ¶ 170.)

In 1980, HHI filed its statement of continued use of the Panther Martin trademark with the USPTO. (Pl.'s 56.1 ¶ 171.) Plaintiff asserts that in 1981, HHI's registration and ownership of the Panther Martin trademark in the United States became incontestable under the Lanham Act, 15 U.S.C. § 1065. (Pl.'s 56.1 ¶ 172.) Defendants dispute that the incontestable status is valid. (Def.'s response to Pl.'s 56.1 ¶ 172.) At no time during its dealing with HHI did Pozzi & Canegrati s.d.f. ever object to HHI's use of the Panther Martin, Animal Logo, or The Greatest Fish Catcher of All Time trademarks. (Pl.'s 56.1 ¶ 173.)

In 1981, the Milan Chamber of Commerce issued a certificate reflecting that Pozzi & Canegrati was converted into Pozzi & Canegrati s.n.c., (formal general partnership), whose members were Walter Bressan and Angelo Pollastri. (Defs.' 56.1 ¶ 62.) Plaintiff asserts that the cited document and English translation thereof provided by the defendants does not say this. (Giovanni Guglielmetti Decl.) Defendants assert that Pozzi & Canegrati s.d.f. and Pozzi & Canegrati s.n.c.

are the same partnership in a different legal form. (Defs.' 56.1 ¶ 64.) Plaintiff disputes that Pozzi & Canegrati s.d.f. and Pozzi & Canegrati s.n.c. are the same partnership in a different legal form. (Giovanni Guglielmetti Decl.) HHI continued its business relations with Pozzi & Canegrati s.n.c. after Pozzi & Canegrati s.d.f. became Pozzi & Canegrati s.n.c. (Defs.' 56.1 ¶ 65.)

Commencing in 1981 and continuing until 1992, HHI began to purchase fishing lures from Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 175.) Plaintiff claims that HHI and Pozzi & Canegrati s.d.f. ceased doing business with each other in 1981. (Pl.'s 56.1 ¶ 174.) Defendants assert that HHI continued doing business with Pozzi & Canegrati s.n.c., which is the same partnership as Pozzi & Canegrati s.d.f. in a different legal form, and therefore HII never ceased doing business with Pozzi & Canegrati s.d.f. (Costanza Decl. Ex. A. at 3-5, Ex.2.) Plaintiff alleges that the purchases between HHI and Pozzi & Canegrati s.n.c. were pursuant to oral agreements and purchase orders placed with Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 176.) Defendants argue, however, that HHI's purchases from Pozzi & Canegrati s.n.c. were made pursuant to the 1979 contract. (Nahum Decl. Ex. 7.) By an assignment dated January 14, 1983, Pozzi & Canegrati s.d.f. assigned its U.S. registration of its "Martin" trademark to Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 177.) Plaintiff asserts that Pozzi & Canegrati s.d.f. never assigned the March 30, 1979 agreement with HHI to Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 178.) Defendants agree that an assignment was never made but note that such assignment was not necessary because Pozzi & Canegrati s.d.f. was converted into Pozzi & Canegrati s.n.c. (Costanza Decl. Ex. A at 3, 5 n.2.)

At no time during its existence did Pozzi

& Canegrati s.n.c. ever register the Panther Martin, Animal Logo, or Greatest Fish Catcher of All Time trademarks with any governmental authority in the United States, Italy, or any other country in the world. (Pl.'s 56.1 ¶¶ 181, 182, 183.) At no time did Pozzi & Canegrati s.n.c. ever use the Panther Martin trademark in its catalogs. (Pl.'s 56.1 ¶ 184.) Plaintiff further asserts that Pozzi & Canegratti s.n.c. never used the Panther Martin trademark in the packaging of its products. (Pl.'s 56.1 ¶ 185.) Defendants argue, however, that HHI was Pozzi & Canegrati s.n.c.'s distributor, and that HHI's authorized use of the Panther Martin mark in packaging Pozzi & Canegrati's lure constitutes Pozzi & Canegrati's use of the trademark. (Aff. of Cecil Hoge, Jr., including ¶ 140, 286; Pl.'s Summ. J. Ex. 43; Nahum Dep. at 146-47.) According to plaintiff, at no time did Pozzi & Canegrati s.n.c. ever use The Greatest Fish Catcher of All Time or the Animal Logo trademarks. (Pl.'s 56.1 ¶¶ 186, 187.)

Between 1981 and 1992, HHI continued to use the Panther Martin, Animal Logo, and The Greatest Fish Catcher of All Time trademarks in conjunction with its business and the marketing, advertising, and selling of fishing lures and other products, including on products made by companies other than Pozzi & Canegrati. (Pl.'s 56.1 ¶¶ 188, 189.) Defendants argue, however, that there is no evidence to establish that HHI used the Panther Martin mark on products made by companies other than Pozzi & Canegrati s.n.c. from 1981 through 1992. (Defs.' response to Pl.'s 56.1 ¶ 189.) Plaintiff contends that Pozzi & Canegrati s.n.c. ever objected to HHI's use of the Panther Martin, Animal Logo or The Greatest Fish Catcher of All Time trademarks in connection with its business or with fishing lures and products made by companies other

than Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 190.) Defendants dispute the implication that Pozzi & Canegrati s.n.c. had knowledge that HHI used the Panther Martin mark in connection with its business or with fishing lures and products made by companies other than Pozzi & Canegrati s.n.c. (Nahum Decl. ¶ 39.)

Plaintiff claims that Pozzi & Canegrati was not involved with how HHI used the Panther Martin Trademark in its business. (Pl.'s 56.1 ¶ 191.) Defendants argue, however, that Pozzi & Canegrati were involved with the manufacturing, quality control, design and promotion of goods on which HHI used the Panther Martin mark. (Nahum Decl. ¶¶ 28-29, Ex. 12.) HHI exclusively selected and determined what products it would buy from Pozzi & Canegrati and sell under the Panther Martin trademark. (Pl.'s 56.1 ¶ 192.) HHI contends that the relationship between HHI and Pozzi & Canegrati was one of exclusive buyer and seller, not manufacturer and distributor or manufacturer and agent. (Pl.'s 56.1 ¶ 193.) Defendants disagree and, instead, claim that the relationship between HHI and Pozzi & Canegrati was one of distributor and manufacturer. (Constanza Decl. Ex. A at 2; Nahum Decl. ¶¶ 32-38, Ex. 7.)

Harrison Hoge exclusively designed the packaging for lures it bought from Pozzi and Canegrati and sold under the Panther Martin trademark. (Pl.'s 56.1 ¶ 194.) Plaintiff contends that all catalogs, advertising, and other promotional material that HHI created using the Panther Martin trademark on lures purchased from Pozzi & Canegrati were made by HHI, most of which were personally created by Cecil Hoge, Jr. (Pl.'s 56.1 ¶ 195.) Plaintiff further contends that no one at Pozzi & Canegrati ever assisted, participated in or

had any input or say over this advertising. (Pl.'s 56.1 ¶ 195.) Defendants disagree, asserting that it is untrue that no one at Pozzi & Canegrati ever assisted in or had any say over HHI's catalogs using the Panther Martin mark. (Nathan Decl. ¶ 37, Ex. 12.) Pozzi & Canegrati never paid for any of the promotional material HHI created and used for the Panther Martin trademark. (Pl.'s 56.1 ¶ 196.) Plaintiff contends that once HHI purchased a product from Pozzi & Canegrati, HHI was free to sell it as HHI saw fit. (Pl.'s 56.1 ¶ 197.) Defendants disagree and assert that HHI needed permission from Pozzi & Canegrati before selling Pozzi & Canegrati's Panther Martin lures outside of the United States, its territories, and possessions. (Nahum Decl.) Defendants point to two emails in which HHI requested permission to sell the lures in a particular area or include the lures in a new catalog. (Nahum Decl. Exs. 12, 13.) HHI claims that it periodically sent copies of its catalogs and advertisements to Pozzi & Canegrati. (Pl.'s 56.1 ¶ 198.) Plaintiff claims that this information was sent to Pozzi and Canegrati after the catalogs and advertisements had already been published. (Pl.'s 56.1 ¶ 198.) Defendants dispute, however, that they received HHI's catalogs and cite to only one instance, in 1984, in which they received a catalog. (Nahum Decl. ¶ 12.) According to plaintiff, Pozzi & Canegrati never provided HHI with any promotional materials and guidelines on how to use the Panther Martin trademark. (Pl.'s 56.1 ¶ 199.)

In its distribution agreements with other companies, HHI establishes a pricing/commission structure for lures that distributors sell under the Panther Martin trademark. HHI provides the product training and sales materials and totally controls the development of catalogs and products and develops the marketing material using the Panther Martin trademark. (Pl.'s 56.1 ¶ 200.) Neither Angelo Pollastri nor Walter Bressan, the two owners of Pozzi & Canegrati, ever expressed any opinion regarding HHI's use of either the "Martin" or "Panther Martin" trademarks. (Pl.'s 56.1 ¶ 201.) Defendants dispute any implication that Mr. Pollastri or Mr. Bressan had any knowledge of HHI's abuse of the Panther Martin mark. (Nahum Decl. ¶ 39; Hoge Aff. Ex. 11 at HH 000528.) HHI never placed the name of Pozzi & Canegrati on any of the packages for the products, advertisements, or catalogs that HHI used with the Panther Martin trademark. (Pl.'s 56.1 ¶ 202.)

Plaintiff asserts that Pozzi & Canegrati and Simplex are companies unknown to the U.S. trade and consumer markets. (Pl.'s 56.1 ¶ 203.) Plaintiff further asserts that, the company names Pozzi & Canegrati and Simplex would not be recognized by consumers, and they are not associated with the Panther Martin mark. (Pl.'s 56.1 ¶ 203.)

Defendants, however, argue that the Panther Martin mark is associated with Panther Martin. (Nahum Decl. ¶ 8.) For example, on May 30, 2007, Kelly Brandt, a customer in the United States, e-mailed Panther Martin as follows:

> "I would really like to be able to order your lures directly from your factory in Milano because the quality of the Panthers in the U.S. are very poor. They are now made in China and they do not hold up to the fish I catch, (mostly large German Brown Trout). Could you please send me information including costs in English so that I could place an order for some excellent quality Panther Martin lures.

I love these lures and would appreciate the opportunity to do business with you."

(Nahum Decl. Ex. 25.)

Pozzi & Canegrati never directly marketed its lures in the United States. (Pl.'s 56.1 ¶ 204.) Plaintiff contends that Pozzi & Canegrati never used the Panther Martin trademark in the United States. (Pl.'s 56.1 ¶ 205.) Defendants, however, assert that HHI was Pozzi & Canegrati's distributor in the United States. (Nahum Decl. Ex. 7.) HHI and Pozzi & Canegrati s.n.c. ceased doing business with each other in 1992 . (Pl.'s 56.1 at ¶ 206.)

Simplex was established in 1992 by Walter Bressan and Angelo Pollastri. (Defs.' 56.1 ¶ 68.) Plaintiff contends that there is no evidence that Walter Bressan and Angelo Pollastri established Simplex on their own. (Pl.'s response to defs.' 56.1 ¶ 68.) Defendants assert that Simplex retained the same address, telephone, and fax number it had as Pozzi & Canegrati s.n.c. (Defs.' 56.1 ¶ 69.) Plaintiff, however, contends that both plaintiff and defendants' expert witness agree that Simplex s.r.l. is a different company than Pozzi & Canegrati s.n.c. Plaintiff points out that Lelio Nahum testified that Simplex and Pozzi & Canegrati s.n.c. were separate companies. (Nahum Decl. ¶ 27.) Plaintiff further notes that Mr. Nahum also testified at his deposition that the property that Simplex occupied was owned by POBRE, which is a different company than either Pozzi & Canegrati s.n.c. or Simplex. (Nahum Dep. At 66.) Therefore, plaintiff contends that as a separate company and legal entity, the address certainly was not what Simplex "had as Pozzi Canegrati." (Pl.'s response to Defs.' 56.1 ¶ 69.)

In 1992, Pozzi & Canegrati s.n.c. sent a letter to its customers and suppliers dated June 10, 1992 stating that "herewith we want to let you know that beginning 10/01/92 our company has changed itself to Simplex s.r.l." (Pl.'s 56.1 ¶ 207.) In that letter, Pozzi & Canegrati s.n.c. wrote that it would "be glad to answer any further questions you may have." (Defs.' 56.1 ¶ 71.) Plaintiff claims that in reliance upon this representation, and believing that Pozzi & Canegrati had simply changed its name to Simplex s.r.l., HHI commenced doing business with Simplex s.r.l. (Pl.'s 56.1 ¶ 208.) Defendants dispute that HHI believed that Pozzi & Canegrati had simply changed its name to Simplex s.r.l. Defendants contend that Simplex identified itself as Simplex s.r.l., "s.r.l." stands for "societa a responsabilita limita" (or limited liability company), and that s.r.l. is the most commonly used corporate form in Italy. (Nahum Decl. ¶ 11.) Plaintiff asserts that undisclosed to HHI, Simplex s.r.l. was an entirely new and separate company from Pozzi & Canegrati s.n.c. which had been established on May 28, 1992. (Pl.'s 56.1 ¶ 209.) Defendants dispute that Pozzi & Canegrati s.n.c. did not disclose to HHI that Simplex s.r.l. was a new company formed by the same partners that owned Pozzi & Canegrati s.n.c.

Prior to December 3, 2004, the name of defendant Panther Martin s.r.l. was Simplex s.r.l. (Pl.'s 56.1 ¶ 210.) Defendant Simplex/PM is currently a manufacturer of fishing lures. (Pl.'s 56.1 ¶ 211.) Prior to December 2004, defendant Simplex/PM was also in the metal stamping business. (Pl.'s 56.1 ¶ 211.) The shareholders of Simplex/PM from 1992 until October 2004 were: Walter Bressan, Angelo Pollastri, Maria Grazia Orlandi, and Maria Grazia Bertoldi. (Pl.'s 56.1 ¶ 212.) Plaintiff contends that defendant Akua is a company engaged in the marketing

and distribution of fishing lures, including those of defendant Simplex/PM. (Pl.'s 56.1 ¶ 213.) Defendants, however, assert that Akua's business is selling everything "from hooks to boots to reels, rods, everything." (Nahum Dep. at 220:23-221:4.) Defendant Akua owns ninety-nine percent of the shares of Defendant Simplex/PM. (Pl.'s 56.1 ¶ 214.) Akua has 45 employees. (Defs.' 56.1 ¶ 101.) From 1992 through 1997, Pozzi & Canegrati s.n.c. continued to exist as a separate legal entity from Simplex s.r.l. (Pl.'s 56.1 ¶ 215.)

In 1992, pursuant to Italian Law, Pozzi & Canegrati s.n.c. entered into a three-year, non-renewable lease of its business to Simplex, s.r.l. (Pl.'s 56.1 ¶ 216.) The existence of the three year, non-renewable lease between Pozzi & Canegrati s.n.c. and Simplex, s.r.l. was never disclosed to HHI. (Pl.'s 56.1 ¶ 217.) The lease expired in 1995. (Pl.'s 56.1 ¶ 218.) Plaintiff claims that upon expiration of the three year lease, Simplex s.r.l. no longer had any legal rights to the business of Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 219.) Defendants dispute that upon expiration of the three year lease, Simplex s.r.l. no longer had any legal rights to the business of Pozzi & Canegrati s.n.c. (Costanza Decl. Ex. A at 6-7.) Defendants claim that, irrespective of the contents of the lease agreement, Simplex received a *de facto* assignment of Pozzi & Canegrati's relationship with HHI, including an assignment of the 1979 Contract. (Costanza Decl. Ex. A at 6-7.) In 1997, Pozzi & Canegrati s.n.c. was wound up following a procedure without liquidation under Italian law. (Pl.'s 56.1 at ¶ 220.) Defendants assert that the assets were transferred to Simplex. (Nahum Decl. Ex. 2.)

Between 1992 and 1997, Pozzi & Canegrati s.n.c. retained ownership of the "Martin" trademarks that it had registered and

used in the United States and Italy for fishing lures made and sold by Simplex s.r.l. to HHI. (Pl.'s 56.1 ¶ 221.) For example, Pozzi Canegrati s.n.c. filed an application dated February 22, 1995 to renew the U.S. "Martin" trademark with the USPTO. (Pl.'s 56.1 ¶ 222.) Said renewal was granted by USPTO action dated June 15, 1995. (Pl.'s 56.1 ¶ 222.) In 1997, Pozzi & Canegrati s.n.c. filed with the Italian government written assignments to Simplex s.r.l. of the "Martin" trademarks Pozzi & Canegrati s.n.c. had registered for use on fishing lures. (Pl.'s 56.1 ¶ 223.) Defendants assert that, in or about 1997, Simplex registered the domain name panthermartin.com and used it as the "url" for its web page. (Defs.' 56.1 ¶ 77.)

In 1998, Pozzi & Canegrati s.n.c. filed with the USPTO a written assignment of the U.S. "Martin" trademark registration to Simplex s.r.l. (Pl.'s 56.1 ¶ 224.) The assignment from Pozzi & Canegrati s.n.c. to Simplex s.r.l. of the USPTO Martin trademark registration had an execution date of March 26, 1998. (Pl.'s 56.1 ¶ 225.) Plaintiff contends that at no time during its dealings with HHI did Simplex s.r.l. ever disclose to HHI that it was not the same company as Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 226.)

Plaintiff asserts that the first time that HHI learned that Simplex was an entirely different company from Pozzi & Canegrati s.n.c. was in the fall of 2005, when defendant Simplex/PM filed copies of the Italian corporation registration records as a Plaintiff Summary Judgment Exhibit in a failed attempt to initiate arbitration of this dispute in Milan, Italy. (Pl.'s 56.1 ¶ 227.) Defendants dispute this assertion and note that by letter dated 06/10/92, Pozzi & Canegrati s.n.c. informed HHI – and all of its customers – that "beginning of 10/01/92 our company changed

itself in Simplex s.r.l." (Costanza Decl. Ex. A. at Ex. 5.)

Plaintiff asserts that Pozzi & Canegrati s.n.c. never assigned to Simplex s.r.l. the March 30, 1979 agreement between Pozzi & Canegrati and HHI. (Pl.'s 56.1 ¶ 228.) Defendants contend that Pozzi & Canegrati assigned the 1979 Contract to Simplex s.r.l. in parallel with the lease agreement (Costanza Decl. Ex. A at 7.) Plaintiff asserts that Pozzi & Canegrati s.d.f. never assigned to Simplex s.r.l. the March 30, 1979 agreements between Pozzi & Canegrati and HHI. (Pl.'s 56.1 ¶ 229.) Defendants contend, however, that Pozzi & Canegrati s.n.c.'s assignment of the 1979 contract to Simplex s.r.l. constitutes Pozzi & Canegrati s.d.f.'s assignment of the contract to Simplex s.r.l. (Costanza Decl. Ex. A. at 3, 9.) According to plaintiff, HHI never assigned the March 30, 1979 agreement to Simplex s.r.l. (Pl.'s 56.1 ¶ 230.) HHI and Pozzi & Canegrati s.d.f. never entered into a written modification of the March 30, 1979 agreement substituting Simplex s.r.l. for Pozzi & Canegrati s.d.f. as a party to the agreement. (Pl.'s 56.1 ¶ 231.) HHI and Simplex s.r.l. never entered into a new written agreement similar to the one that HHI and Pozzi& Canegrati s.d.f. entered into dated March 30, 1979. (Pl.'s 56.1 ¶ 232.)

Between 1992 and December 2004, HHI continued to use the Panther Martin, Animal Logo, and The Greatest Fish Catcher of All Time trademarks in conjunction with its business and marketing, advertising, and selling of fishing lures and other products. (Pl.'s 56.1 ¶ 233.) Between 1992 and December 2004, HHI used the Panther Martin, Animal Logo , and The Greatest Fish Catcher of All Time trademarks in marketing, advertising, and selling fishing lures and other products made by companies other than Simplex, s.r.l. (Pl.'s 56.1 ¶ 234.)

Plaintiff asserts that HHI's product catalogs frequently featured on their covers pictures of fishing lures made by companies other than Simplex s.r.l. Plaintiff further asserts that the covers of these catalogs only had the words Panther Martin plus HHI's Animal Logo. (Pl.'s 56.1 ¶ 235.) Defendants, however, contend that until recent years, all of HHI's catalogs had the name Harrison Hoge, Inc. on the cover, including the 1993, 1994, and 1996 catalogs. (Mertzel Decl. Ex. 18, 19, 21.) Defendants further contend that the first catalog to use the Panther Martin mark on the cover, without HHI's logo and with the image of lures other than Panther Martin lures was the 2004 catalog. (Mertzel Decl. Ex. 5-28.) Only one of the four products on the cover of HHI's 2004 Panther Martin catalog was made by Simplex. (Pl.'s 56.1 ¶ 236.)

Plaintiff asserts that HHI's Panther Martin catalogs listed as Panther Martin fishing lures Frogs, Weedwings, Rockys, and other lures not made by Simplex. (Pl.'s 56.1 ¶ 237.) Defendants dispute that HHI's catalogs were "HHI's Panther Martin" catalogs, and the implication that those catalogs dealt with Frogs, Weedwings, Rockys, and other lures not made by Panther Martin as Panther Martin brands. (Mertzel Decl. Ex. 16 at HH 000412-413, Ex. 17 at HH 000426, Ex. 20 at HH 000478.) Defendants contend that the catalogs advertised Panther Martin's Panther Martin lures, but distinguished between lures made by Panther Martin or its predecessors from other lures. (*Id.*) HHI produced catalogs at least six months to a year in advance. (Pl.'s 56.1 ¶ 238.) Plaintiff asserts that HHI sent copies of all of its catalogs to Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., and Simplex s.r.l. (Pl.'s 56.1 ¶ 239.) Plaintiff asserts that HHI's catalogs were sent by HHI

to the Italian company for informational purposes only. (Pl.'s 56.1 ¶ 240.) Defendants deny that such copies were sent. (Nahum Decl. ¶ 39.) Plaintiff further asserts that HHI periodically sent copies of its advertising to Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., and Simplex s.r.l. (Pl.'s 56.1 ¶ 241.) Defendants deny that such copies were sent. (Nahum Decl. ¶ 39.)

At no time between 1992 and December 2004 did Simplex s.r.l. ever object to HHI's use of the Panther Martin, Animal Logo, or The Greatest Fish Catcher of All Time trademarks in connection with its business or with fishing lures and products made by companies other than Simplex s.r.l. (Pl.'s 56.1 ¶ 243.) At no time between 1961 and December 2004 did Pozzi & Canegratti, Pozzi & Canegratti s.n.c., or Simplex s.r.l. ever object to HHI's use of the Panther Martin, Animal Logo, or The Greatest Fish Catcher of All Time trademarks. (Pl.'s 56.1 ¶ 244.) Defendants do not dispute this but do dispute the implication that Panther Martin was aware of HHI's infringing use. (Nahum Decl. ¶ 39.)

Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., and Simplex/PM never participated in creating ads for HHI using the Panther Martin Trademark. (Pl.'s 56.1 ¶¶ 245, 246, 247.) Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., and Simplex/PM never financed, paid for, or reimbursed HHI for ads that HHI created and ran using the Panther Martin trademark. (Pl.'s 56.1 ¶¶ 248, 249, 250.)

The names Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., and Simplex/PM never appeared on any fishing lures sold to HHI. (Pl.'s 56.1 ¶¶ 251, 252, 253.) Defendants assert, however, that Panther Martin's Panther + Martin mark was embossed on each Panther

Martin lure. (Nahum Dec. Ex. 7.) HHI's name and/or address appears on all packaging of fishing lures sold by HHI under the Panther Martin trademark. (Pl.'s 56.1 ¶ 254.) The names Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., and Simplex/PM never appeared on the packaging of fishing lures sold by HHI under the Panther Martin trademark. (Pl.'s 56.1 ¶¶ 255, 256, 257.) Defendants assert, however, that Panther Martin's Panther + Martin mark was embossed on each Panther Martin lure. (Nahum Dec. Ex. 7.)

The name "Harrison Hoge Industries" usually appears in all advertisements HHI runs using the Panther Martin trademark. (Pl.'s 56.1 ¶ 258.) Where the name "Harrison Hoge Industries" does not appear in an advertisement using the Panther Martin trademark placed by HHI, the name Panther Martin or PantherMartin.com appears in the advertisement with the address and telephone number of HHI. (Pl.'s 56.1 ¶ 259.) The names Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., or Simplex/PM never appeared in ads placed by HHI using the Panther Martin trademark. (Pl.'s 56.1 ¶ 260.) Defendants assert, however, that Panther Martin's Panther + Martin mark was embossed on each Panther Martin lure and was visible in HHI's advertisements. (Nahum Decl. Ex. 7; Mertzel Decl. Ex. 32.) When shipping goods to HHI in the United States, Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., and Simplex/PM would ship in bulk. (Pl.'s 56.1 ¶¶ 261, 262, 263.)

Plaintiff asserts that at no time between 1961 and December 2004 did Walter Bressan or Angelo Pollastri ever claim or represent to Cecil Hoge that they believed that Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., or Simplex s.r.l. were the true owners of the

Panther Martin, Animal Logo, and/or The Greatest Fish Catcher of All Time trademarks owned and used by HHI. (Pl.'s 56.1 ¶ 264.) Defendants contend that the 1979 Contract provided that those entities owned the Panther Martin mark. (Nahum Ex. 7.) Plaintiff asserts that at no time between March 30, 1979 and December 2004 did Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., or Simplex s.r.l. ever send any correspondence or claim that the March 30, 1979 agreement gave them ownership of HHI's Panther Martin trademark. (Pl.'s 56.1 ¶ 265.) Defendants dispute this assertion and note that the correspondence approving HHI's request that it be allowed to include certain models of Panther Martin lures reflects Panther Martin's understanding that it was the owner of the Panther Martin mark. (Nahum Decl. Ex. 12.) Additionally, defendants assert that the correspondence between Cecil Hoge and Walter Bressan and Angelo Pollastri reflects Panther Martin's understanding that it was the owner of the Panther Martin mark. Defendants further assert that HHI asked that it be allowed to sell in Eastern Europe and Russia through Hong Kong Yat Tai Co., Ltd. (hereinafter, "HKYT"). Defendants contend that Panther Martin agreed to allow HHI to sell through HKYT in those areas, but not on an exclusive basis, since Panther Martin already had a distributor selling in those areas and doing well. (Mertzel Decl. Ex. 34.)

In 1996, Simplex s.r.l. informed HHI that they had been contacted by Zebco Corporation, the owner of Martin Reels (hereinafter, "ZEBCO"). (Pl.'s 56.1 ¶ 266.) Martin Reels is a pre-eminent fishing lure company in the United States. (Pl.'s 56.1 ¶ 267.) Simplex stated that they had been contacted by ZEBCO because an examining attorney at the USPTO had denied registration of the Martin trademark to ZEBCO due to Pozzi & Canegrati's registration of the Martin trademark in the United States. (Pl.'s 56.1 ¶ 268.) ZEBCO never contacted HHI about any possible conflict between ZEBCO's Martin trademark and HHI's Panther Martin registered USPTO trademark. (Pl.'s 56.1 ¶ 269.) The USPTO allowed both HHI's Panther Martin trademark and Pozzi & Canegrati's "Martin" trademark to be separately registered since 1975. (Pl.'s 56.1 ¶ 270.) Plaintiff asserts that HHI's Panther Martin trademark and the "Martin" trademark, now owned by Simplex s.r.l., have co-existed in the fishing lure industry since 1958. (Pl.'s 56.1 ¶ 271.) Plaintiff further asserts that separate registrations for the Martin and Panther Martin trademarks have co-existed since 1975. (Pl.'s 56.1 ¶ 271.) Defendants dispute that the Panther + Martin and Panther Martin marks co-existed for any other reason than that they were both owned by Panther Martin. (Nahum Decl. ¶¶ 18-19, and Ex. 3, 7.) Defendants further contend that HHI registered the Panther Martin mark with Pozzi & Canegrati's permission. (Nahum Decl. ¶¶ 18-19, and Ex. 3, 7.) Simplex contacted HHI to inform them about the ZEBCO request for consent. (Pl.'s 56.1 ¶ 272.) HHI responded to Simplex that ZEBCO's request was a matter for Simplex to handle, as it involved Simplex's trademark. (Pl.'s 56.1 ¶ 273.)

In 2003, HHI asked its trademark law firm to conduct a worldwide trademark search of the Panther Martin trademark, especially in those major countries in which HHI marketed its business and fishing lures. (Pl.'s 56.1 ¶ 274.) HHI was advised that, except in Japan and Canada, the Panther Martin trademark had not been registered in any countries outside of the United States. (Pl.'s 56.1 ¶ 275.)

Panther Martin s.r.l. is a corporation organized and existing under the laws of Italy

having a registered office at Via Cadore n. 36, 20020, Milan, Italy. (Pl.'s 56.1 ¶ 276.) The official registered name change of Simplex s.r.l. to Panther Martin s.r.l. occurred in February of 2005. (Pl.'s 56.1 ¶ 277.) The registered office for defendant SIMPLEX/PM is Via Cadore, n.36, 20020, Milan, Italy. (Pl.'s 56.1 ¶ 278.) Defendant Akua is a corporation organized and existing under the laws of Italy with a registered office at Via Colletta, N. 65, 20020, Milan, Italy. (Pl.'s 56.1 ¶ 279.)

On December 3, 2004, the outstanding shares of Simplex s.r.l. were acquired by defendant Akua and Mrs. Laura Turi. (Pl.'s 56.1 ¶ 280.) Approximately three (3) hours before this acquisition, the heirs of Angelo Pollastri held a special meeting of the shareholders of Simplex s.r.l. (Pl.'s 56.1 ¶ 281.) At this meeting, the shareholders changed the name of Simplex s.r.l. to Panther Martin s.r.l. (Pl.'s 56.1 ¶ 282.) Plaintiff asserts that the name change was made at the request and instructions of Mr. Lelio Nahum, the former husband of Mrs. Laura Turi. (Pl.'s 56.1 ¶ 283.) Defendants contend that the name change was made by Gabriella Pollastri and her partners. (Pl.'s 56.1 ¶ 284.) Plaintiff asserts that Daniel Nahum is an owner and General Manager of Akua s.r.l. the company which purchased a majority of the shares of Simplex s.r.l. (Pl.'s 56.1 ¶ 285.) Defendants assert that Daniel Nahum is a consultant for Akua s.r.l. (Nahum Dep. at 18:12-22.) Marcel Nahum is the General Manager of Simplex/PM. (Pl.'s 56.1 ¶ 286.)

Plaintiff asserts that both defendant Simplex/PM and defendant Akua are affiliates commonly operated and controlled by Lelio Nahum and his sons. (Pl.'s 56.1 ¶ 287.) Defendants, however, contend that Panther Martin and Akua have different ownership, management, and operations. (Nahum Decl. ¶ 15.) Defendants assert that Akua and Panther Martin have separate warehouses. (Defs.' 56.1 ¶ 103.) Plaintiff, however, contends that Akua and Panther Martin share offices and employees. (Pl.'s response to defs.' 56.1 ¶ 103.) Defendants assert that Akua and Panther Martin maintain separate bank accounts. (Defs.' 56.1 ¶ 104.) Plaintiff, however, contends that Mr. Nahum testified that various companies that he represents share joint advertising expenses. (Pl.'s response to Defs.' 56.1 ¶ 104.) Defendants assert that Akua and Panther Martin hold separate board meetings and shareholder meetings. (Defs.' 56.1 ¶ 105.)

Simplex/PM is 99 percent owned by Akua s.r.l., a company in the wholesale fishing business. (Pl.'s 56.1 ¶ 289.) Akua s.r.l. is 99 percent owned by Israel Investments, a trust in Israel. (Pl.'s 56.1 ¶ 290.) Both Simplex/PM and Akua engage in business in the United States. (Pl.'s 56.1 ¶ 291.) Plaintiff asserts that Akua purchases more than $100,000 a year of products from companies in the United States. (Pl.'s 56.1 ¶ 292.) Plaintiff further asserts that Akua's representatives have also met with and corresponded by email with HHI. (Pl.'s 56.1 ¶ 292.) Defendants, however, contend that representatives from Panther Martin have met with and corresponded with HHI. (Nahum Decl. ¶ 15.)

On December 3, 2004, the new owners of Simplex s.r.l. assumed the operations of the company. (Pl.'s 56.1 ¶ 293.) Plaintiff asserts that on December 14, 2004, the new owners of Simplex s.r.l., through Lelio Nahum, advised HHI through a fax that they had acquired Simplex and had changed the name to Panther Martin s.r.l. (Pl.'s 56.1 ¶ 294.) Defendants, however, dispute that the Simplex name was changed by the new owners. (Nahum Decl. ¶ 14.)

By an e-mail dated December 22, 2004, the new owners of Simplex s.r.l., through an e-mail from Lelio Nahum, advised HHI that they claimed ownership of the Panther Martin trademark and that they would be changing the name of Simplex s.r.l. to Panther Martin, s.r.l. (Pl.'s 56.1 ¶ 295.) In subsequent correspondence and dealings with HHI, the new owners of Simplex s.r.l. cited the March 30, 1979 agreement between HHI and Pozzi & Canegrati as being the basis of Defendant Simplex/PM's claim of ownership of the Panther Martin trademark. (Pl.'s 56.1 ¶ 296.) By email dated December 22, 2004, HHI explicitly rejected Lelio Nahum's claims that Simplex/PM was the owner of the Panther Martin trademark. (Pl.'s 56.1 ¶ 297.)

Plaintiff asserts that in January 2005, Cecil Hoge, Jr. traveled to Milan, Italy to meet the new owners of defendant Simplex/PM. (Pl.'s 56.1 ¶ 298.) The meeting was held with Lelio Nahum, the representative of defendants Simplex/PM and Akua. (*Id.*) Also present at the meeting was Daniel Nahum. (*Id.*) At the meeting, and at subsequent meetings, and in correspondence, Lelio Nahum and Daniel Nahum represented and held themselves out as having ownership, managerial, and ultimate decision making positions with defendants Simplex/PM and Akua. (*Id.*) Defendants, however, contend that Lelio Nahum stated that he was a consultant for Panther Martin. (Nahum Dep. 8:14-16.) Plaintiff asserts that at the initial January meeting, and in subsequent meetings and written correspondence, HHI informed Simplex/PM and Akua of HHI's exclusive ownership rights in the Panther Martin trademark. (Pl.'s 56.1 ¶ 299.) Defendants, however, contend that HHI has no ownership rights in Panther Martin's Panther Martin mark. (Nahum Decl. Ex. 7.) By email, the new owners of Simplex s.r.l. announced a price increase for some of the

best selling fishing lures sold to HHI. (Pl.'s 56.1 ¶ 300.) Defendants also assert that HHI encouraged Panther Martin to maintain a unified front to the world. (Defs.' 56.1 ¶ 89.) Defendants further assert that Cecil Hoge, Jr. told Lelio Nahum during a January 2005 meeting that there was "no problem" with Panther Martin's use of "The Greatest Fish Catcher of All Time" trademark. (Defs.' 56.1 ¶ 90.) Plaintiff disputes both assertions. (Cecil Hoge, Jr. Aff.)

The new owners of Simplex/PM also announced that they would no longer allow HHI to have fishing lures containing blades made by Simplex/PM painted in China by HHI's Chinese fishing lure manufacturer, HKYT. (Pl.'s 56.1 ¶ 301.) Instead, the new owners of Simplex/PM announced that they would contract directly with HKYT and HHI would be required to buy completed fishing lures, with the painted blades as a component from Simplex/PM. (Pl.'s 56.1 ¶ 303.) Plaintiff asserts that since 2001, HKYT has manufactured Panther Martin fishing lures for HHI, including Panther Martin Frogs, Panther Martin Vivifs, and Panther Martin Weedwings. (Pl.'s 56.1 ¶ 304.) Defendants dispute that Frogs, Vivif, and Weedwings are Panther Martin lures. (Nahum Decl. Ex. 7.) HHI originated the relationship with HKYT after Aiken Warner, a U.S. fishing lure manufacturer based in Ohio and used by HHI, went out of business. (Pl.'s 56.1 ¶ 305.)

HHI, working with HKYT, developed a holographic color and paint design for Panther Martin Frogs. (Pl.'s 56.1 ¶ 306.) Defendants dispute that Frogs are Panther Martin lures, as the Panther Martin mark is allegedly owned by Panther Martin. (Nahum Decl. Ex. 7.) Plaintiff asserts that Simplex/PM lacked the facilities or know-how to develop a holographic color and paint design on spinner

lures using its blades. (Pl.'s 56.1 ¶ 307.) Defendants, however, contend that Simplex allowed HHI to have Simplex's Panther Martin blades colored in China as a service to accommodate HHI and that HHI claimed the process was less expensive in China. (Nahum Dep. at 169:14-170:19.) In 2001, HHI informed Simplex/PM that HHI wanted to introduce holographic spinner fishing lures, using Simplex blades. (Pl.'s 56.1 ¶ 308.) HHI contracted with Simplex/PM to ship the blade components for Panther Martin spinner lures to HKYT for processing in holographic color and paint designs. (Pl.'s 56.1 ¶ 309.) Defendants assert that only limited qualities and colors were authorized. (Nahum Decl. ¶ 30.) HHI contracted directly with HKYT for the painting of Simplex/PM blades. (Pl.'s 56.1 ¶ 310.)

Simplex/PM had no direct relationship with HKYT for the finishing of the holographic blades. (Pl.'s 56.1 ¶ 311.) All orders were placed by HHI, who determined the quantity of the blades to be shipped from Simplex/PM to HKYT. (*Id.*) All invoices for HKYT's work went directly to and were paid by HHI. (*Id.*) HHI selected and specified the design and color of all holographic blades finished by HKYT. (*Id.*) At no time between 2001 and 2005 did Simplex/PM ever request, or did HHI ever pay, a royalty, commission, or other fee to Simplex/PM for HKYT's painting of Simplex blades in Holographic designs and colors pursuant to HKYT's contract with HHI. (Pl.'s 56.1 ¶ 312.) Plaintiff asserts that at no time between 1979 and 1992 did Pozzi & Canegrati ever request, or did HHI ever pay, a royalty, commission, or other fee for Frogs, Weedwings, and other fishing lures produced pursuant to HHI's contracts with Aitken Warner and sold by HHI under the Panther Martin trademark. (Pl.'s 56.1 ¶ 313.) Defendants dispute that Frogs, Weedwings, or

other lures were sold by HHI under the Panther Martin mark between 1979 and 1992. (Mertzel Decl. Ex. 11-18.) Plaintiff further asserts that at no time between 1992 and December 3, 2004 did Simplex ever request, or HHI ever pay, a royalty, commission, or other fee for Frogs, Weedwings, and other fishing lures produced pursuant to HHI's contract with HKYT and sold by HHI under the trademark Panther Martin. (Pl.'s 56.1 ¶ 314.) Defendants dispute that HHI had authority to sell lures under the Panther Martin mark that were not made or approved by Panther Martin. (Nahum Decl. ¶ 39.) Defendants contend that Panther Martin was not aware and did not approve of the sale of Frog, Weedwings, or any other lure not made by Panther Martin under the Panther Martin mark. (Nahum Decl. ¶ 39.)

Plaintiff asserts that the demand by Lelio Nahum and the other new owners of Simplex/PM for a direct relationship with HKYT was contrary to the business relationships that HHI had with both HKYT and Simplex. (Pl.'s 56.1 ¶ 315.) Defendants contend, however, that the relationship between Panther Martin and HHI was governed by the 1979 contract. (Nahum Decl. Ex. 7.) Plaintiff asserts that the new owners of Simplex/PM also proposed that Simplex/PM would pay a token commission to HHI for the Panther Martin Vivif fishing lure, which had been developed by HHI in the 1950s. (Pl.'s 56.1 ¶ 316.) Plaintiff further asserts that Simplex/PM had never been involved with the development or sale of the Panther Martin Vivif fishing lure and that HHI rejected these demands from the new owners. (*Id.*) Defendants, however, contend that Panther Martin proposed that HHI pay a minimal royalty for use of Panther Martin's Panther Martin mark. (Mertzel Decl. Ex. 33.) Defendants dispute that Vivif was a Panther

Martin lure and that it "had been developed by HHI in the 1950s." (Nahum Decl. Ex. 7; C. Hoge Dep. at 9:24-10:19.)

During the first few months of 2005, HHI sought to find a basis for a commercial resolution of the dispute between itself and the new owners of Simplex s.r.l. regarding the Panther Martin trademark. (Pl.'s 56.1 ¶ 317.) HHI's efforts to find a commercial resolution of the trademark ownership claims raised by the new owners of Simplex/PM were based on a desire to avoid the costs of litigation and the long-term dealings HHI had with various companies in Italy. (Pl.'s 56.1 ¶ 318.) None of these settlement proposals suggested that Simplex/PM was the owner of the Panther Martin trademark in the United States. (Pl.'s 56.1 ¶ 319.) HHI's settlement offers were rejected.

Plaintiff asserts that at a January 2005 meeting in Milan, Lelio Nahum represented to Cecil Hoge that Panther Martin would not file any trademark registrations for the Panther Martin trademark in non-U.S. countries until HHI and Simplex/PM had resolved their outstanding dispute over ownership of the trademark. (Pl.'s 56.1 ¶ 322.) Defendants, however, contend that Mr. Nahum told Cecil Hoge that he sought to maintain a business relationship with HHI and would work with HHI to maintain a relationship contingent on HHI's recognition that Panther Martin is the owner of the Panther Martin mark. (Defs.' Answer ¶ 181.) On February 16, 2005, Simplex changed its name to Panther Martin. Defs.' 56.1 ¶ 78.) Defendants assert that Cecil Hoge repeatedly described the relationship between Panther Martin and HHI as a continuation of the relationship between HHI and Pozzi & Canegrati. (Defs.' 56.1 ¶ 79.) Plaintiff, however, contends that Cecil Hoge treated the relationship between Simplex and

Pozzi & Canegrati as being the same relationship – not a continuation – because in 1992 Pozzi & Canegrati sent a letter saying it had changed itself into Simplex. (Pl.'s Response to Defs.' 56.1 ¶ 79.) Plaintiff further contends that defendants have admitted that they never informed HHI that Simplex and Pozzi & Canegrati were not the same company. (*Id.*)

HHI learned in May of 2005 that Simplex/PM had filed trademark applications to register the Panther Martin trademark in a number of foreign countries including: Italy, the European Union, Norway, Denmark, and the People's Republic of China. These applications were filed during the time period between February and May 2005. (Pl.'s 56.1 ¶ 323.)

In late May or early June 2005, HHI also learned that the defendant Simplex/PM was using the trademarks Panther Martin, the Animal Logo and The Greatest Fish Catcher of All Time in connection with the sale of Simplex/PM goods. (Pl.'s 56.1 ¶ 324.) Defendant Simplex/PM ran an advertisement using HHI's trademarks Panther Martin, the Animal Logo and The Greatest Fish Catcher of All Time in the magazine Tackle Trade World. (Pl.'s 56.1 ¶ 325.) Tackle Trade World is a publication that has its largest circulation in the United States. (Pl.'s 56.1 ¶ 326.) Plaintiff asserts that Defendant Simplex/PM's advertisement in the 2005 edition of Tackle Trade World is almost an exact copy of a Web page from HHI's website. (Pl.'s 56.1 ¶ 327.) Defendants do not dispute that, as authorized by Cecil Hoge, the ads presented a unified front to the world, and it was similar to a page from HHI's website. (Nahum Decl. ¶¶ 55-56.) Simplex/PM's advertisement in the 2005 edition of Tackle Trade World has only the

name and address of defendant Panther Martin s.r.l. (Pl.'s 56.1 ¶ 328.) The advertisement contained no reference to HHI. (Pl.'s 56.1 ¶ 329.) The statement of circulation as of September 1, 2005, published by Tackle Trade World states that it is circulated in a number of countries and that 2,467 copies were circulated in the United States. (Pl.'s 56.1 ¶ 330.) Thirty one percent of the total circulation of Tackle Trade World was in the United States. (Pl.'s 56.1 ¶ 331.) Plaintiff asserts that the cost of the 2005 Tackle Trade World was invoiced to and paid by Yo-Zuri Europe, a company owned and/or controlled by Mr. Lelio Nahum and members of his family. (Pl.'s 56.1 ¶ 333.) Defendants, however, contend that Yo-Zuri is not owned and controlled by Mr. Nahum or his family. (Nahum Dep. at 155:6-8.)

Simplex/PM has produced product catalogs using the Panther Martin and Animal Logo trademarks which it has and does distribute in commerce to actual and potential customers of defendants Simplex/PM and Akua. (Pl.'s 56.1 ¶ 334.) Plaintiff asserts that as the 99% shareholder and marketing agent for defendant Simplex/PM, defendant Akua, acting by and through his agent, Lelio Nahum, acquiesced, assisted, and/or instructed and directed defendant Simplex/PM to commence advertising using HHI's trademarks and copyrighted material. (Pl.'s 56.1 ¶ 335.)

On June 8, 2005, Lelio Nahum met with Cecil Hoge, Jr. and John Hoge at the HHI offices in Port Jefferson, New York. (Pl.'s 56.1 ¶ 336.) Mr. Nahum was invited to meet with John Hoge and Cecil Hoge, Jr. to discuss a resolution of the dispute between the new owners of HHI and Simplex/PM. (*Id.*) Mr. Nahum was invited to attend the meeting with the attorneys for Simplex/PM. (Pl.'s 56.1 ¶ 337.) At the meeting, Mr. Nahum was advised by Cecil Hoge that Simplex/PM's failure to reach a commercial resolution of Simplex/PM's new owners' claims regarding ownership of the Panther Martin trademark would result in HHI taking other actions to resolve the matter. (Pl.'s 56.1 ¶ 338.)

Plaintiff asserts that Lelio Nahum served as the President of European Fishing Tackle Trade Association (EFTTA), a European trade association for the fishing industry based in London, England. (Pl.'s 56.1 ¶ 339.) In June, 2005, after the filing of Plaintiff HHI's first Complaint, Simplex/PM exhibited products at the EFTTA's 2005 EFTTEX trade show using the Panther Martin trademark. (Pl.'s 56.1 ¶ 341.) EFTTA gave an award to Defendant Simplex/PM at the 2005 EFTTEX trade show for "best new product." (Pl.'s 56.1 ¶ 342.) The product for which Defendant Simplex/PM won its 2005 EFTTEX award was not manufactured by Simplex/PM. (Pl.'s 56.1 ¶ 343.) Defendants, however, note that the product was designed by Panther Martin. (Defs.' Answer to Pl.'s First Amended Complaint ¶ 123.) The product for which Simplex/PM won its 2005 EFFTEX award has never been sold by HHI. (Pl.'s 56.1 ¶ 344.) At the 2005 EFTTEX trade show, EFTTA gave an award in honor of Angelo Pollastri, a deceased former co-owner of Simplex s.r.l. (Pl.'s 56.1 ¶ 345.) The award given in honor of Angelo Pollastri was given in the name of "Panther Martin, s.r.l.", not Simplex s.r.l. (Pl.'s 56.1 ¶ 346.) During the lifetime of Angelo Pollastri the name of the company he co-owned was Simplex s.r.l. not Panther Martin s.r.l. (Pl.'s 56.1 ¶ 347.) Plaintiff asserts that at prior trade shows, Simplex s.r.l. had exhibited its products under the "Martin" trademark, not the Panther Martin trademark. (Pl.'s 56.1 ¶ 349.) Defendants contend that Simplex had exhibited its products under the Panther + Martin mark. As of May 3, 2006,

the EFTTA website continued to list Simplex s.r.l. as a separate member from Panther Martin s.r.l. on its webpage. (Pl.'s 56.1 ¶ 350.)

In the spring of 2005, HHI contacted Walter Bressan, one of the former cosignatories of the March 30, 1979 contract for Pozzi & Canegrati and a former shareholder of Simplex to ask him whether he could help resolve the trademark ownership dispute. (Pl.'s 56.1 ¶ 351.) John Hoge traveled to Milan, Italy twice in the Spring of 2005 to meet with Mr. Bressan, at which time Mr. Bressan agreed to provide HHI with a statement confirming his understanding that the owners of Pozzi & Canegrati had always considered HHI the owners of the Panther Martin trademark and that neither Pozzi & Canegrati nor Simplex had ever registered or used the Panther Martin trademark. (Pl.'s 56.1 ¶ 352.) Mr. Bressan's attorney provided to HHI's attorneys a notarized declaration from Mr. Bressan confirming his understanding that HHI was the "owner of the Panther Martin trademark. (Pl.'s 56.1 ¶ 353.) Defendants dispute that Mr. Bressan's Affidavit was truthful and accurately reflected his understanding. (Nahum Decl. ¶¶ 50.)

In August 2005, HHI, through its counsel, provided Simplex/PM and Akua a sworn, notarized declaration from Walter Bressan, the only surviving signor of the March 30, 1979 agreement between HHI and Pozzi & Canegrati. (Pl.'s 56.1 ¶ 354.) Walter Bressan is a former co-owner of Pozzi & Canegrati s.d.f. and Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 356.) Until the death of Angelo Pollastri in 2004, Mr. Bressan was also one of the four original shareholders of Simplex, s.r.l. (Pl.'s 56.1 ¶ 357.) In his declaration, Mr. Bressan in part states that Plaintiff HHI "was and does remain the exclusive owner of the Panther Martin trademark totally free to use it as it sees fit." (Pl.'s 56.1 ¶ 356.) Plaintiff asserts that notwithstanding its knowledge that the former co-owner of Pozzi & Canegrati, and signatory to the 1979 agreement, had signed a sworn declaration that HHI is the exclusive owner of the Panther Martin trademark, defendants Simplex/PM and Akua continued to advertise and exhibit at trade shows using the trademark. (Pl.'s 56.1 ¶ 359.) Defendants dispute that Akua ever advertised using HHI's trademarks. Defendants contend that Akua had no input in Panther Martin's advertisements. (Nahum Decl. ¶ 56.)

Plaintiff asserts that defendants have sought to interfere with HHI's other suppliers, including HKYT. (Pl.'s 56.1 ¶ 360.) Defendants contend, however, that Panther Martin did not attempt to interfere with HHI's suppliers. Defendants claim that they informed certain third parties that Panther Martin owns the Panther Martin mark in an attempt to protect Panther Martin's rights. (Nahum Decl. ¶ 63.) Defendants also dispute the implication that Panther Martin is HHI's "supplier," rather, defendants assert that HHI is a mere distributor. (Nahum Decl. Ex. 7.) Plaintiff asserts that both before and after plaintiff HHI filed its complaint, Lelio Nahum and Daniel Nahum, acting on behalf of Simplex/PM and Akua, contacted and met with officer and employees of HKYT. (Pl.'s 56.1 ¶ 362.) Plaintiff further asserts that during these meetings, defendants falsely claimed that defendant Simplex/PM is the owner of the Panther Martin trademark. (*Id.*) Defendants contend, however, that Lelio Nahum and Daniel Nahum were acting on behalf of Panther Martin, who allegedly owned the Panther Martin mark. (Nahum Decl ¶ 63; Ex. 7.) At these meetings, defendants also sought to have HKYT produce products for sale by defendants under

the Panther Martin trademark. (Pl.'s 56.1 ¶ 363.) Plaintiff asserts that, at these meetings, defendants also sought to have HKYT cease doing business with HHI. (Pl.'s 56.1 ¶ 364.) Defendants contend, however, that Panther Martin informed HKYT of its ownership of the Panther Martin mark and its intention to enforce its trademark rights. (Nahum Decl. ¶ 63.)

Plaintiff asserts that, in addition to contacting HHI's other suppliers, defendants have sought to interfere with customers and agents of HHI in an effort to persuade them to do business with Simplex/PM and Akua rather than HHI. (Pl.'s 56.1 ¶ 365.) For example, after the initial complaint in this case was filed, defendants, by and through Mr. Lelio Nahum, met with officers and employees of Solvkroken, plaintiff HHI's Norwegian distributor. (Pl.'s 56.1 ¶ 366.) Plaintiff contends that Solvekroken A/S is a distributor for Simplex/PM or that it implies that only lures manufactured by the Defendants for HHI are called "Panther Martin" lures.[4] (Pl.'s response to defs.' 56.1 ¶ 87.) Plaintiff claims that in these meetings, defendants have falsely claimed that Simplex/PM is the owner of the Panther Martin trademark. (Pl.'s 56.1 ¶ 367.) Plaintiff alleges that defendants asked HHI's distributors to cease doing business with HHI and instead purchase products from defendant Simplex/PM for sale under the Panther Martin trademark. Plaintiff further alleges that

---

[4] Plaintiff cites to the agreement signed between Solvkroken, HHI and Panther Martin s.r.l. that states as follows: "This is to certify that Panthermartin.com division of Harrison-Hoge Industries, Inc., hereby acknowledges the following as an exclusive distributor of our fishing lures for the Scandinavian countries (Norway, Sweden, Finland, Iceland and Denmark.)" (Pl.'s Response to Defs.' 56.1 ¶ 87.)

defendants have threatened that if the customers and agents of HHI do not cease doing business with HHI the defendants will use other companies to sell and distribute products in these markets using the Panther Martin mark. (Pl.'s 56.1 ¶ 368.) Defendants contend that they were merely informing distributors, agents and customers of their ownership rights in the Panther Martin mark and their intention to enforce its trademark rights. (Nahum Decl. ¶ 63.)

In August, 2005, Simplex/PM filed a request with the Chamber of National and International Arbitration of Milan, Counsel of Arbitration to initiate an arbitration proceeding of the dispute in Milan, Italy seeking an arbitration ruling under the 1979 contract that Simplex/PM was the owner of the Panther Martin trademark. (Pl.'s 56.1 ¶ 369.) Plaintiff alleges that it was at that time that HHI first learned that Simplex/PM was an entirely different company from Pozzi & Canegrati and that the two companies had co-existed for almost five years. (Pl.'s 56.1 ¶ 370.) Plaintiff further alleges that HHI opposed the arbitration. (*Id.*) Defendants point to a letter dated 6/10/1992 in which Pozzi & Canegrati s.n.c. informed HHI and all of its customers that in the "beginning of 10/01/92 our company changed itself in Simplex S.R.L." (Nahum Dec. ¶ 27.) In late 2005, the Milan arbitration panel dismissed Simplex's arbitration request for lack of jurisdiction. (Pl.'s 56.1 ¶ 371.)

HHI has lost some customers, especially for sales that it made from the United States to Europe. (Pl.'s 56.1 ¶ 372.) Its distributor in the United Kingdom (St. Piran) stopped dealing with HHI around the time this dispute arose. (*Id.*) Around the same time, Faro Sports, a Korean company that purchased HHI's lures, also stopped dealing with HHI.

(*Id.*) They also failed to pay sums owed to HHI of about $12,000. (*Id.*)

Plaintiff asserts that HHI and its customers and suppliers were concerned that Lelio Nahum would attempt to limit HHI's supply of fishing hooks and components. (Pl.'s 56.1 ¶ 373.) Plaintiff asserts that Mr. Nahum had boasted to them that he was well-connected with Mustad, one of the major fish hook manufacturers in the world, and that Mr. Nahim threatened Solvkroken that he would offer a "Panther Martin" distributorship in Norway to Mustad if Solvkroken would not agree to be a distributor for Simplex/PM rather than HHI. (*Id.*) Plaintiff asserts that HKYT spoke with Mustad about this dispute and reported that Mustad would not become involved in this dispute. (*Id.*) Defendants dispute that they threatened Solvkroken. Defendants contend that Panther Martin informed Solvkroken that it owned the Panther Martin mark and intended to enforce its rights. (Nahum Decl. ¶ 63.) Plaintiff alleges that Lelio Nahum also met with representatives of HKYT in China claiming that Simplex/PM was the actual owner of the "Panther Martin" trademark. Mr. Nahum threatened to sue HKYT if they continued to challenge Simplex/PM's ownership of the "Panther Martin" trademark. (Pl.'s 56.1 ¶ 374.) Defendants dispute that they threatened HKYT. Defendants assert that Panther Martin informed HKYT that Panther Martin owned the Panther Martin mark and intended to enforce its rights. (Nahum Decl. ¶ 63.) Plaintiff also alleges that Mr. Nahum asked HKYT to produce inferior copies of fishing lures that are made by other companies. Further, plaintiff alleges that Mr. Nahum stated that Simplex/PM would sell under the "Panther Martin" trademark. (Pl.'s 56.1 ¶ 375.) Defendants, however, contend that Mr. Nahum simply inquired into less expensive goods. (Nahum Dep. at 171:12-16.)

Plaintiff asserts that, in June 2006, Simplex/PM placed another advertisement in Tackle Trade World. This advertisement was called "The History of a Legend, Panther Martin, the Spinner Made in Italy Since 1938." (Pl.'s 56.1 ¶ 376.) Defendants contend that this was an article, not an advertisement, nor was it written by Panther Martin. (Nahum Dep. at 160:6 - 163:19.) Plaintiff asserts that the alleged advertisement contains multiple false assertions. (Pl.'s 56.1 ¶ 377.) Plaintiff asserts that the advertisement falsely claims that Simplex/PM has been selling it spinners under the name of "Panther Martin." (Pl.'s 56.1 ¶ 378.) Plaintiff further asserts that none of the catalogs for Pozzi & Canegrati, Simplex, or even Panther Martin s.r.l. contained spinners in their catalogs with the names "Panther Martin." (*Id.*) They used the "Martin" name or other trademarks. (*Id.*) Defendants contend that Panther Martin had been selling lures under the Panther Martin mark through its distributors in the United States, beginning with Rockland Tackle Co. (Nahum Decl. ¶ 16.) Plaintiff asserts that the advertisement falsely claims that the spinner was invented in the 1930s and that the patent for it was sold to Pozzi & Canegrati. (Pl.'s 56.1 ¶ 379.) In fact, Pozzi & Canegrati was created in 1938 and the patent for the spinner was issued in 1953. (*Id.*) Plaintiff further asserts that there is no documentation or other evidence that Pozzi & Canegrati ever had the right to this patent. (*Id.*) Defendants, however, contend that Panther Martin spinners were developed in the late 1930's, Panther Martin acquired the rights in 1938, and a patent was issued in 1953. (Nahum Decl. ¶¶ 6-7) Plaintiff alleges that the advertisement falsely claims that Pozzi & Canegrati and then Simplex/PM sold lures under the "Panther Martin" name in "Canada, Estonia,

France, Germany, Lithuania, Norway, Portugal, Russia, Spain, Switzerland, Ukraine, United Kingdom and many others." (Pl.'s 56.1 ¶ 382.) Plaintiff further alleges that, while these companies may have sold their spinner fishing lures under the Martin trademark to customers in these countries, they did not do so under the Panther Martin trademark. (*Id.*) Defendants, however, contend that the Panther Martin lures were sold by Panther Martin distributors under the Panther Martin mark in numerous countries throughout the world. (Nahum Decl. ¶ 8.)

Plaintiff asserts that the 2006 TTW advertisement contains a number of facts that are contradicted by a February 2005 Il Pescatore Italian magazine article about Simplex/PM. (Pl.'s 56.1 ¶ 383.) Defendant contends, however, that the 2006 article corrects misstatements, and elaborates on facts stated in the 2005 article. For example the 2005 article stated: "In 1980 Angelo Pollastri and Walter Bressan take over [Pozzi & Canegrati] . . . ." despite the fact that Mr. Pollastri and Mr. Bressan were running Pozzi & Canegrati prior to signing the 1979 Contract with HHI. (Nahum Decl. ¶ 9.) The Il Pescatore article was written by a journalist friend of Angelo Pollastri. (Pl.'s 56.1 ¶ 384.) The photographs of Simplex in that article are the same photographs that appeared in the subsequent Tackle Trade World advertisement. (*Id.*) The earlier Pescatore article about Simplex continuously refers to the "Martin" trademark, not the Panther Martin trademark. (Pl.'s 56.1 ¶ 385.) Except for a passing reference to the panthermartin.com website, the Il Pescatore article never mentions the words "Panther Martin." (*Id.*) It never says that Simplex or Pozzi & Canegrati ever called its business or fishing lures "Panther Martins." Instead, the title of the article is "Once Upon a Time. . . .

Made in Italy. Simplex, a Glorious Brand." (*Id.*) The article specifically says that the spinner fishing lures were the "Magical Martins" and the "Mythical Martins" not Panther Martins. (*Id.*) The 2006 TTW advertisement did not use HHI's Animal Logo or The Greatest Fish Catcher of All Time trademarks. (Pl.'s 56.1 ¶ 386.) It did use "Best Spinner Ever." (*Id.*)

Plaintiff asserts that defendants continue to publish a catalog using a copy of HHI's Panther Martin, Animal Logo, and The Greatest Fish Catcher of All Time Trademarks. (Pl.'s 56.1 ¶ 387.) Defendants dispute that HHI owns the Panther Martin mark, and assert that the Panther Martin mark is owned by Panther Martin. (Nahum Decl. Ex. 7.) Defendants also dispute that they publish a catalog with the Animal Logo and The Greatest Fish Catcher of All Time trademarks. (Nahum Decl ¶ 57.) Defendants continue to publish a website at http://www.panthermartin and http://www.panthermartin.it which includes the "Panther Martin" trademark and a logo of an animal head in a circle. (Pl.'s 56.1 ¶ 388.)

Defendants assert that the "About Us" page of HHI's website states the following:

> We have been exclusively importing Panther Martin® lures from Italy for 39 years. . . . Panther Martin was invented and designed by an ardent fisherman in Poland. . . He licensed Pozzi e Canegratti, [sic] a small artisan metal stamp manufacturer in Italy, to produce the first Panther Martin® lures. They started up in 1943 literally during World War II, and have been producing Panther Martin® lures ever since.

(Defs.' 56.1 ¶ 81.) HHI displayed this page until at least July 2005. (Defs.' 56.1 ¶ 82.)

Defendants assert that Panther Martin receives direct requests for Panther Martin lures from United States customers. (Defs.' 56.1 ¶ 83.) Plaintiff contends that defendants have neither cited nor provided any documentary evidence that either Pozzi & Canegrati s.d.f., Pozzi & Canegrati s.n.c., or Simplex s.r.l. ever received a direct request for Panther Martin lures from United States customers between the years 1958 through December 3, 2004, the date that Simplex s.r.l. was acquired by defendant Akua, s.r.l., and Lelio Nahum's ex-wife. (Pl.'s Response to Defs.' 56.1 ¶ 83.)

Between 1992 and 2005, HHI spent at least one million dollars in further advertising and promoting its "Panther Martin," "Animal Logo" and "The Greatest Fish Catcher of All Time" trademarks. (Pl.'s 56.1 ¶ 393.) Between 1997 and 2006, Harrison Hoge spent $860,952.05 in advertising these trademarks. (*Id.*) Plaintiff asserts that the actions of the new owners of Simplex/PM since assuming control of that company in December 2004 have damaged HHI. (Pl.'s 56.1 ¶ 394.) Plaintiff further asserts that it has lost customers in countries such as the United Kingdom who used to buy from HHI in the United States. (*Id.*) Defendants contend that any damage HHI has suffered is a result of HHI's actions and attempt to usurp Panther Martin's Panther Martin mark. (Nahum Decl. ¶ 63.) According to plaintiff, the litigation has also created difficulties for HHI with some of its U.S. customers. (Pl.'s 56.1 ¶ 395.)

Defendants assert that HHI ordered, received, and never paid for approximately two hundred and forty four thousand dollars ($244,000.00) worth of Panther Martin lures.

(Defs.' 56.1 ¶ 91.) HHI placed approximately two hundred forty four thousand dollars ($244,000.00) in an interest bearing escrow account, which now totals at least two hundred sixty five thousand dollars ($265,000.00). (Defs.' 56.1 ¶ 92.)

On April 2, 2007, the Court in Milan heard defendant Simplex/PM's motion for an injunction against HHI's use of the Panther Martin trademark in Europe. (Pl.'s 56.1 ¶ 400.) That motion was subsequently denied. (Pl.'s 56.1 ¶ 401.) The Court in Milan ordered Defendant Simplex/PM to pay HHI 3,000 euros as compensation for defending the motion. (*Id.*)

## B. Procedural History

On June 14, 2005, HHI filed a complaint alleging trademark infringement, confusion, unfair competition, copyright infringement, breach of contract, intentional interference with a contract, and breach of the duty of good faith and fair dealing. Defendants answered the complaint and filed a counterclaim on September 16, 2005. Defendants claimed breach of contract, trademark infringement, and false designation of origin. Defendants further requested a declaratory judgment as to trademark ownership. On October 6, 2005, plaintiff answered the counterclaims. On May 2, 2007, plaintiff moved for summary judgment. On June 26, 2007, defendants filed its opposition and cross-moved for summary judgment. On July 17, 2007, plaintiff filed their opposition to defendants' cross motion and filed their reply. On August 17, 2007, defendants filed their reply. Oral argument was held on September 18, 2007.

## II. DISCUSSION

### A. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). "[W]hen the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." *Postlewaite v. McGraw-Hill, Inc.*, 411 F .3d 63, 67 (2d Cir. 2005)

### B. Motions to Strike Evidence

Both sides are submitted various motions to strike certain affidavits, declarations, and exhibits submitted by the opposing party in connection with the cross-motions for summary judgment. However, as set forth below, the Court concludes that there is no basis for granting any of these motions to strike.

First, plaintiff has made a motion to strike defendants' Declaration of Nancy J. Mertzel, Esq., because it is not based on personal knowledge. That motion is denied. It is well established that an attorney's affidavit can be

used, in connection with a summary judgment motion, to place documents produced in discovery before the Court. *See, e.g., United States v. Letscher,* 83 F. Supp. 2d 367, 381 (S.D.N.Y. 1999) ("[I]t is usual for counsel to put documents before the Court on summary judgment motions as enclosures to counsel's affidavit."); *Owens-Corning Fiberglass v. U.S. Air,* 853 F. Supp. 656, 663 (E.D.N.Y. 1994) ("[B]ecause the clear function of the Affidavit is to identify and introduce into evidence the exhibits annexed thereto, the purposes underlying Rule 56(e) – to safeguard and legitimate the evidence used to decide a motion for summary judgment – are not disserved by considering the Affidavit on this motion."); *see also Clark v. Bank of N.Y.,* 801 F. Supp. 1182, 1189 (S.D.N.Y. 1992) ("Moreover, Tantilla's affidavit serves to introduce original documents, the validity of which plaintiffs do not contest. Accordingly, plaintiffs' motion to strike Tantilla's affidavit is denied."). In the instant case, it is clear that the purpose of Ms. Mertzel's declaration is to place documents in discovery before the Court (most of which plaintiff does not contest) and there is no basis to strike her declaration or the accompanying exhibits. Accordingly, the motion to strike Ms. Mertzel's Declaration in its entirety is denied.

Second, plaintiff requests that the Court strike Exhibit 4 to the Metzel Declaration or, in the alternative, disqualify Ms. Mertzel and her law firm from continuing to represent the defendants because she could be called as a witness with respect to purported alterations to Exhibit 4. In support of this motion, plaintiff submits the Affidavit of Bruce Tietz, an expert in printing technology and document authentication, who concludes from his examination of a copy of Exhibit 4 that it is likely that it has been altered or is not an authentic document. As a threshold matter,

the Tietz Affidavit does not conclusively establish that Exhibit 4 was altered. Thus, plaintiff's contentions regarding the authenticity of the document do not prevent it from being considered in connection with the summary judgment motion. Moreover, Ms. Mertzel simply represented that Exhibit 4 was a true and correct copy of a business card, and there is no reason to believe she has any knowledge as to any alleged alterations to that card. In short, there is no basis to disqualify Ms. Mertzel as a potential witness with respect to the authenticity of Exhibit 4. Accordingly, the motion with respect to Exhibit 4 and disqualification of Ms. Mertzel is denied.

Third, plaintiff seeks to strike defendants' Declaration of Lelio Nahum on the ground that it is not based on personal knowledge. However, it is clear that Mr. Nahum's Declaration is being submitted as that of the defendants' corporate representative. It is axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of corporate books and records. *See, e.g., Kelly v. City of New York,* No. 01 Civ. 8906, 2005 U.S. Dist. LEXIS 19140, at *41-42 (S.D.N.Y. Sept. 2, 2005), *aff'd in part, rev'd in part sub nom., Bey v. City of New York,* 210 Fed. Appx. 50 (2d Cir. 2006) (affirming denial of motion to strike); *Zakre v. Norddeutsche Landesbank Girozentrale,* 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005); *accord Catawba Indian Tribe v. South Carolina,* 978 F. 2d 1334, 1342 (4th Cir. 1992); *F.D.I.C. v. Selaiden Builders, Inc.,* 973 F.2d 1249, 1255 n.12 (5th Cir. 1992). Thus, to the extent Mr. Nahum's declaration is based upon his review of defendants' books and records, or other documents he reviewed in his official capacity as corporate representative, it can be considered under Rule 56(e). Accordingly,

the motion to strike the Nahum Declaration and accompanying exhibits is denied.

Finally, defendants have moved to strike the Declaration of Bruce Tietz, who is plaintiff's expert referenced above, because of plaintiff's failure to provide expert disclosure in a timely manner. After considering the factors relevant to determining whether to exclude expert testimony under Rule 37(c)(1), the Court concludes that exclusion is not the appropriate remedy here because, among other things, defendants have suffered no prejudice from the delay. As noted above, despite the authenticity issues raised by Mr. Tietz, the Court does not believe there is sufficient justication for refusing to consider Exhibit 4 at the summary judgment stage. Thus, the Court is considering the document. Accordingly, defendants' motion to strike the Tietz Declaration is denied.

In sum, all of the motions to strike (and the motion to disqualify defendants' counsel) are denied. The Court also notes that, even assuming *arguendo* that these motions to strike were granted in whole or in part, such ruling would not have impacted the Court's overall determination regarding the disputed issues of fact in this case which prevent summary judgment (on all but two claims) for the reasons discussed *infra*.

## C. Standing Under the 1979 Contract

Plaintiff argues that defendants lack standing to sue under the 1979 Contract because Simplex/PM is not a party to the contract. Defendants argue that they have standing because they were properly assigned the rights under the 1979 Contract. The 1979 Contract provides that it "shall be interpreted and applied according the law and procedures of the State of New York and the Italian

Republic; in the case of discrepancy between the two interpretations resources shall be made to arbitration. . . ." (Nahum Decl. Ex. 7.) Thus, the Court must first determine whether there is a conflict between New York law and Italian law with regard to assignments.

As set forth below, there is no material difference between Italian law and New York law on assignments, as it relates to the factual circumstances of this case. Moreover, plaintiff's contention that defendants lack standing to sue under the 1979 contract because Simplex/PM is not a party to that contract is unavailing.

### 1. Italian Law

After reviewing the affidavit of plaintiff's expert Professor Giovanni Guglielmetti and defendants' expert Professor Maria Costanza, the Court finds that there is no material difference on the issue of assignment under Italian and New York law. The Court finds that Italian law, similar to New York law (discussed *infra*), allows a contract to be assigned except where the parties have expressly agreed otherwise. (Costanza Decl. ¶ 3.) The Court further finds that under both Italian and New York law, no special form of acceptance is required, except where the contract specifically requires assent in a particular form. (Costanza Decl. ¶ 3.) Both Professor Costanza and Professor Guglielmetti agree that absent a restrictive provision in the contract, HHI's consent could be demonstrated by the circumstances and their conduct. (Costanza Decl. ¶ 11; Guglielmetti Decl. Ex. C. at (c)(4).) The Court, therefore, holds that there is no material difference between Italian and American law which would require the case to be submitted to arbitration.

## 2. New York Law

Under New York law, a contract may be freely assigned in the absence of language which expressly prohibits assignment. *See Allhusen v. Caristo Const. Corp.*, 303 N.Y. 446, 103 N.E.2d 891 (1952); *Sullivan v. Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235 (N.Y. App. Div. 2d Dep't 1983); *Matter of S & L Vending Corp. v. 52 Thompkins Ave. Rest., Inc.*, 274 N.Y.S.2d 697 (N.Y. App. Div. 2d Dep't 1966); *see also Melino v. Nat'l Grange Mut. Ins. Co.*, 630 N.Y.S.2d 123 (N.Y. App. Div. 3d Dep't 1995). "[O]nly express limitations on assignability are enforceable." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,* 109 F.3d 850, 856 (2d Cir. 1997). "To reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way." *Id.*; *Univ. Mews Assocs. v. Jeanmarie*, 471 N.Y.S.2d 457, 461 (N.Y. Sup. Ct. 1983); *see also Allhusen,* 303 N.Y. at 446 (noting that non-assignability language must be clear and definite).

The undisputed facts are as follows: In March of 1979, Pozzi & Canegrati s.d.f. and HHI entered into a written agreement in which Pozzi & Canegrati s.d.f. gave HHI the exclusive right to purchase and sell in the United States fishing lures manufactured by Pozzi & Canegrati s.d.f. (Pl.'s 56.1 ¶ 150.) The contract was intended to ratify the "past business relations of the parties." (Nahum Decl. Ex. 7 at 4.) The 1979 Contract does not contain an express restriction on assignment. *Id.* The contract appears to have even contemplated an assignment with language that states "[t]he rights and obligations ratified by the present contract are now understood to be extended to possible heirs, executors, administrators, successors or assignees of both parties." (Nahum Decl. Ex. 7 at 4.) Further, the 1979 Contract does not contain a requirement that written assent be provided before an assignment could occur. (Nahum Decl. Ex. 7.) Commencing in 1981 and continuing until 1992, HHI purchased fishing lures from Pozzi and Canegrati s.n.c. instead of Pozzi and Canegrati s.d.f. (Pl.'s 56.1 ¶ 175.) By an assignment dated January 14, 1983, Pozzi & Canegrati s.d.f. assigned its U.S. registration of its "Martin" trademark to Pozzi & Canegrati s.n.c. (Pl.'s 56.1 ¶ 177.)

In a letter dated June 10, 1992, Pozzi & Canegrati s.n.c. informed HHI and all of its customers that "beginning [] 10/01/92 our company has changed itself in: Simplex S.R.L." (Nahum Decl. ¶ 27 and Ex. 8.) After receiving this letter, HHI ceased doing business with Pozzi & Canegrati s.n.c. and began doing business with Simplex. (Hoge Aff. ¶¶ 203-207.) Cecil Hoge has stated that he treated the relationship between Simplex and Pozzi & Canegrati as being the same relationship because of the 1992 letter from Pozzi & Canegrati. (Pl.'s Response to Defs.' 56.1 ¶ 79.) Pozzi & Canegrati s.n.c. was voluntarily dissolved after winding up on February 3, 1998. (Defs.' 56 .1 ¶ 67.) On December 3, 2004, Simplex s.r.l. changed its name to Panther Martin s.r.l. (Pl.'s 56.1 ¶ 210.)

Plaintiff argues that defendants lack standing to sue under the 1979 Contract because Simplex/PM is not a party to the contract. In particular, plaintiff argues that (1) the Pozzi & Canegrati principals lacked the intent to make the successive assignment required to transfer the rights and duties of the

1979 Contract to Panther Martin; and (2) any assignment of the 1979 Contract violated the 1979 Contract's modification clause. Plaintiff argues that substituting one name for another constitutes a modification that required a written assent by both parties. As set forth below, the Court finds plaintiff's standing arguments unpersuasive.

With respect to plaintiff's argument that there was no clear assignment of the 1979 Contract, the courts have held that "[n]o particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." *Leon v. Martinez*, 84 N.Y.2d 83, 88 (1994); *see Mele v. Travers*, 741 N.Y.S.2d 319 (N.Y. App. Div. 3d Dep't 2002); *Tawil v. Finkelstein Bruckman Wohl Most & Rothman*, 646 N.Y.S.2d 691 (N.Y. App. Div. 1st Dep't 1996); *Whalen v. Gerzof*, 615 N.Y.S.2d 465 (N.Y. App. Div. 3d Dep't 1994); *Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc.*, 199 N.Y.S.2d 852 (N.Y App. Div. 4th Dep't 1960); *Property Asset Mgmt., Inc. v. Chicago Title Ins. Co.*, 173 N.Y.S.3d 84, 87 (2d Cir. 1999)). In order to effect a valid assignment, the assignor must be "divested of all control over the thing assigned." *Coastal Commercial Corp. v. Kosoff & Sons*, 10 A.D.2d 372, 376 (N.Y. App. Div. 4th Dep't 1960); *see In re estate of Jordan*, 605 N.Y.S.2d 596 (N.Y. App. Div. 4th Dep't 1993); *see also Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557-58 (2d Cir. 1976). Defendants' conduct is instructive as to their intention to assign the rights and duties of the 1979 Contract to Pozzi & Canegrati s.n.c. and later to Simplex s.r.l. Through both the 1983 assignment of the "Martin" trademark registration and the 1992 letter to their customers, defendants have established their intention to assign the rights and duties of the 1979 contract to Pozzi & Canegrati s.n.c. and later to Simplex S.r.l. The Court, therefore, finds that defendants had the requisite intent in effectuating an assignment through their conduct in both instances[5].

With respect to plaintiff's argument that the assignment is a modification thereby requiring written assent, the Second Circuit has stated:

> [i]ndeed, it is elementary that an assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged. Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor.

*Ametex Fabrics v. Just in Materials, Inc.,* 140 F.3d 101, 107 (2d Cir. 1998); *see also Citibank, N.A. v. Tele/Res., Inc.,* 724 F.2d 266, 269 (2d Cir. 1983) ("An assignment does not modify the terms of the underlying contract."); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 74 (S.D.N.Y. 1999) ("[T]he assignment of a contract does not modify the obligations of the contract."). Plaintiff has provided no evidence that the nature of the relationship during the 20 year period changed from the initial

---

[5]Because the Court finds that a proper assignment occurred from Pozzi & Canegrati to Simplex s.r.l., the Court finds no basis for plaintiff's claim of abandonment.

agreement set out in the 1979 Contract. The Court, therefore, finds that no modification occurred as a result of the assignment requiring the written assent of the parties.

Accordingly, the Court holds that, under New York law, defendant Panther Martin has standing to sue under the 1979 Contract and plaintiff's motion for summary judgment on that ground is denied.

## C. Analysis of Claims

Plaintiff and defendants both claim ownership of the "Panther Martin" mark. Both parties cite to the 1979 Contract as evidence of ownership. Plaintiff asserts claims for trademark infringement, copyright infringement, false designation of origin, and misappropriation. Similarly, defendants assert claims for trademark infringement. Defendants also bring a claim for payment on a fulfilled order for plaintiff.

As set forth below, with the exception of the plaintiff's claims against Akua and Panther Martin's claim for $244,000 in lures owed by HHI, the Court concludes that there are disputed issues of fact that preclude summary judgment in either side's favor.

### 1. The 1979 Contract and Ownership of the Panther Martin Mark

Plaintiff claims that the use of the term "Panther Martin" in the March 1979 Contract refers to Pozzi & Canegrati's "Martin" registered trademark and not the "Panther Martin" trademark. Defendants claim that the 1979 Contract is susceptible to only one reasonable interpretation: namely, that the parties agreed that the Panther Martin mark was the property of Panther Martin, not HHI. Defendants note that, in the 1979 contract,

HHI "stipulated and agreed" that Pozzi & Canegrati "is the holder of the trade mark 'Panther Martin.'" (Defs.' 56.1 ¶ 49.)

As discussed below, the Court concludes that the contractual language is ambiguous because of, among other things, its reference to ratifying "past business relations" and, because there are numerous disputed issues of fact as it relates to extrinsic evidence, the Court concludes that summary judgment with respect to the 1979 Contract or the ownership of the mark is unwarranted.

New York law provides that in interpreting a contract, "words and phrases. . . . should be given their plain meaning," and the contract "should be construed so as to give full meaning and effect to all of its provisions." *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation and internal quotation marks omitted). "[A]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless. . . . is not preferred and will be avoided if possible.'" *Id.* at 124 (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks omitted)). "Parties to a contract may not create an ambiguity merely by urging conflicting interpretations of their agreement." *Sayers v. Rochester Tel. Corp. Supplemental Mgt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (citations omitted). The contract terms are not ambiguous if the terms have "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and. . . . there is no reasonable basis for a difference of opinion" concerning them. *Id.* (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)).

An unambiguous contract contains language that has "a definite and precise

meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks and citations omitted). In other words, "[a] contract is not ambiguous where there is no reasonable basis for a difference of opinion." *Red Rock Commodities v. Standard Chartered Bank*, 140 F.3d 420, 424 (2d Cir. 1998). "The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002). However, "when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) (citation and internal quotation marks omitted). "Whether a contractual provision is ambiguous is a threshold question of law to be determined by the court. If a court determines that a contractual provision is ambiguous, the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Ocean Partners, LLC v. N. River Ins. Co.,* No. 04 Civ. 00470 (BSJ)(GWG), 2008 WL 142863, at *3 (S.D.N.Y. Jan. 14, 2008) (citation and internal quotation marks omitted). Further, the court may "consider extrinsic evidence such as the parties' course of conduct throughout the life of the contract." *N.Y. State Law Officers Union v. Andreucci,* 433 F.3d 320, 332 (2d Cir. 2006). Courts have specifically held that "[w]here the contractual language is subject to more than one reasonable meaning and where extrinsic

evidence of the parties' intent exists, the question of the proper interpretation should be submitted to the trier of fact." *TeeVee Toons, Inc. v. DM Records, Inc.,* No. 05 Civ. 5602 (JGK), 2007 WL 2851218, at *6 (S.D.N.Y. Sept. 27, 2007) (collecting cases).

The 1979 Contract specifically states that the contract "intends to ratify in writing [the parties] past business relations" and "ratifies all agreements made between the parties." (Nahum Decl. Exh. 7, ¶¶ 1,4.) The 1979 Contract also references the May 1973 letter and "prior correspondence," whose precise meaning and effect also are disputed. In short, after reviewing the contractual language (and its attempt to incorporate past business relations between the parties), the Court concludes that its language is ambiguous and, thus, the parties are permitted to resort to extrinsic evidence of the parties' intent.

Plaintiff cites to a number of pieces of extrinsic evidence in attempt to establish that the 1979 contract referred to the "Martin" registered trademark and not the "Panther Martin" trademark. Plaintiff points to their 1974 USPTO registration of the Panther Martin trademark, as evidence of their previous ownership of the "Panther Martin" trademark. (Pl.'s 56.1 ¶ 144.) Plaintiff further argues that the fact that the March 1979 Contract addresses ownership and use of the "Martin" trademark, not the "Panther Martin" trademark, is demonstrated by its silence on HHI's "Animal Logo" and "The Greatest Fish Catcher of All Time" trademarks, both of which were created and used by HHI to identify its fishing lure business and fishing lures manufactured by various companies and sold under the "Panther Martin" trademark. Plaintiff also argues that the contract's contemplation of a future registration action is extrinsic evidence of plaintiff's position.

Additionally, plaintiff points to the 1973 letter, specifically incorporated by reference in the 1979 contract, which plaintiff interprets as referencing the Martin trademark as "Panther Martin." (Nahum Decl. Exh. 3.)

Defendants rely on a number of pieces of extrinsic evidence to establish that the 1979 contract referred specifically to the "Panther Martin" trademark. Defendants argue that both immediately before and after the execution of the 1979 Contract, the parties recognized that the trademark "Panther Martin" means what it says: the Panther Martin mark. Defendants point to an interim letter agreement, signed just days before the execution of the 1979 Contract, which described the subject of the lures as being "denominated Panther Martin." (Nahum Decl. Ex. 6.) Defendants also note that just months after executing the 1979 Contract, HHI reaffirmed to defendants that it "would never simply produce Panther Martins without paying [Panther Martin] a royalty." (Pl.'s Mot. Summ. J.. at 22-23.) Defendants further note that the 1979 Contract states that "Pozzi. . . . authorizes [sic] HOGE to deposit in its own name the trademark 'Panther-Martin' at the United States Patent Office." (Defs.' 56.1 ¶ 57.) Defendants argue that both of these facts establish that "Panther Martin" was and is the property of Defendants. Defendants also point to a 1973 letter which speaks of the trade name "Panther Martin" and authorizes HHI to deposit and register with the USPTO the trade name "Spinner Martin Panther." (Nahum Decl. Exh. 4.)

In sum, because the contractual language is subject to more than one reasonable meaning and there are numerous factual disputes relating to the extrinsic evidence, summary judgment as it relates to the 1979 Contract and the ownership of the Panther Martin mark is denied.[6]

b. Estoppel

Defendants also contend that the 1979 Contract estops HHI from challenging defendants' ownership of the Panther Martin mark. Defendants argue that because HHI acknowledged in the 1979 contract that defendants were the owners of the "Panther Martin" mark, and agreed to return whatever rights HHI had in the Panther Martin mark to defendants upon termination of the 1979 contract, it is estopped from now challenging Panther Martin's ownership of the mark. Defendants cite to a number of cases for the proposition that where a licensee recognizes the ownership of a trademark, it may not later dispute such ownership. *See e.g., Norden Rest. Corp. v. Sons of Revolution,* 51 N.Y.2d 518, 522 (1980) ("Having recognized defendant's ownership of the name 'Fraunces Tavern Restaurant,' and having accepted the licensed use of the name upon the terms dictated by the defendant, plaintiff cannot now assert ownership of it as against defendant."); *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 291-92 (S.D.N.Y. 2000) (holding that a party cannot challenge the validity of trademark it contracted to use "simply because it is dissatisfied with the bargain it struck"); *Union Tank Car Co. v. Lindsay Soft Water Corp.,* 257 F. Supp. 510, 516 (D. Neb 1966) (holding that distributor that entered into agreement with manufacturer recognizing validity of trademark estopped

---

[6]Because material issues of fact exist as to the ownership of the trademark "Panther Martin," the Court denies summary judgment as to plaintiff's claims of misappropriation, trademark infringement, false designation of origin and unfair competition, abandonment, and naked licensing.

from raising naked licensing argument). The facts present in those cases are distinguishable from the instant case.

In particular, as highlighted above, both sides provide extrinsic evidence to give context to the term "Panther Martin" referred to in the contract. Because the meaning of the term "Panther Martin" is disputed in the contract, a defense of estoppel cannot be decided at the summary judgment stage.

b. Incontestability of Trademark Ownership

Plaintiff also argues that, under 15 U.S.C. § 1065, HHI's ownership of the Panther Martin trademark is incontestable. Defendants argue that the use of the Panther Martin mark by defendants' distributors inured to defendants' benefit. Therefore, defendants argue that HHI's own use of the mark pursuant to its agreement with defendants defeats the HHI's claim of incontestability.

"[A] mark registered by its owner shall be prima facie evidence of the registrant's exclusive right to use the mark in commerce on the product. . . . A registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use." *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993) (citing 15 U.S.C. §§ 1065 & 1115(a)).

Once a mark becomes incontestable, registration is "conclusive evidence of the validity of the registered mark and. . . . of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Defendants, however, argue that the mark is not incontestable because a mark is not considered incontestable "to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of the registration under this Act of such registered mark." 15 U.S.C. § 1065 (2007). Defendants argue that HHI's own use of the mark pursuant to its agreement with Panther Martin defeats the claimed incontestability of the mark. *See, e.g., Watec Co. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005) (holding that where American distributor held incontestable registration of Japanese manufacturer's mark it used pursuant to a license from manufacturer, distributor's own use under the license provided "continuous use" which defeated the incontestability).

The Court is unable to determine whether the HHI's ownership of the trademark is incontestable because, as mentioned above, material issues of fact exist as to the 1979 Contract and the license which was granted, as well as the original ownership of the trademark. Accordingly, summary judgment on the issue of incontestability of trademark ownership is also denied.

c. Defendants' Claim of Ownership under the Manufacturer-Distributor Presumption

Defendants argues that, even in the absence of the 1979 Contract, Panther Martin would be the owner of the Panther Martin mark. In particular, Panther Martin argues that as the manufacturer of Panther Martin Lures, Panther Martin would enjoy a rebuttable presumption that it, and not its distributor HHI, owns the Panther Martin mark. As set forth below, this manufacturer-distributor issue cannot be decided at the summary judgment stage because of the disputed issues of fact that exist regarding the

relationship between the parties.

As a threshold matter and as noted *supra*, there is a factual dispute as to the meaning and scope of the 1979 Contract. HHI contends that the 1979 Contract created an exclusive buying agreement to purchase fishing lures made by Pozzi & Canegrati, subject to HHI's designs and specifications. (HHI's Motion for Summ. J. at 14-15). Those factual disputes preclude a summary judgment determination as to whether a manufacturer-distributor relationship existed.

Moreover, if a manufacturer-distributor relationship did exist, as defendants suggest, the Court would then apply the four-factor test from *Sengoku Works v. RMC Int'l,* 96 F.3d 1217, 1220 (9th Cir.1996). *See Tacita Int'l, Inc. v. Atlantic Horizon Int'l,* 154 F. Supp. 2d 586, 600 (S.D.N.Y. 2001) (applying the *Sengoku* test). In order to determine superior ownership a court should consider the following factors:

> (1) which party invented and first affixed the mark onto the product; (2) which party's name appeared with the trademark; (3) which party maintained the quality and uniformity of the product; and (4) with which party the public identified the product and to whom purchasers made complaints.

*Sengoku*, 96 F.3d at 1220; *see also Omega Nutrition U.S.A. Inc. v. Spectrum Mktg., Inc.*, 756 F. Supp. 435, 438-39 (N.D. Cal. 1991). In addition, a court may look at 'which party possesses the goodwill associated with the product, or which party the public believes stands behind the product.' *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 854 (3rd Cir.1986)." *Tacita Int'l,* 154 F. Supp. 2d at 600. Even if the Court

found that a manufacturer-distributor relationship did exist as a matter of law, there are numerous issues of material fact as to each of these factors. The Court, therefore, denies defendants' motion for summary judgment as to this issue.

### d. Defendants' Claim of Infringement of Panther Martin's Panther + Martin mark.

Defendant claims that, even if Panther Martin does not own the Panther Martin Mark, Panther Martin is entitled to summary judgment holding that the Panther Martin mark infringes Panther Martin's Panther+Martin Mark. Likelihood of confusion is analyzed under a "nonexclusive multi-factor test" provided in *Polaroid Corp. v. Polarad Elecs. Corp.*, which includes:

> (1) the strength of the mark;
> (2) the similarity of the two marks;
> (3) the proximity of the products;
> (4) actual confusion;
> (5) the likelihood of plaintiff's bridging the gap;
> (6) defendant's good faith in adopting its mark;
> (7) the quality of defendant's products; and
> (8) the sophistication of the consumers.

287 F.2d 492, 495 (2d Cir. 1961). "In balancing these factors, a court should not treat any one factor as dispositive; neither should it apply the test in a rote fashion such that the party with the greatest number of factors wins." *Sly Magazine, L.L.C. v. Weider Publs. L.L.C.*, 529 F. Supp. 2d 425, 436 (S.D.N.Y. 2007) (citing *Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005)); *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 162 (2d Cir. 2004). "If a factual inference must be drawn to arrive at a particular finding on a

*Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996). Summary judgment may be granted "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." *Id.*

The Court finds that defendants provided insufficient evidence to make summary judgment appropriate as to the issue of likelihood of confusion. Defendants have failed to provide the Court with sufficient evidence to address the factors required by the *Polaroid* test. Defendants' one page argument – with no citations to the factual record – does not establish that they will prevail under the *Polaroid* test. It is defendants' burden to provide evidence to the court that "would lead only to one conclusion." *Id.* Defendants have failed to meet that burden here.

In sum, the numerous disputed factual issues which are outlined in exhaustive detail in the fact section of this Memorandum and Order – surrounding, among other things, the nature of the relationship between the parties, their past dealings, and the ownership of the mark – preclude summary judgment as to either side with respect to any claims related to the Panther Martin mark.

## 2. Defendants' Claim for Payment for Goods Sold and Received

Panther Martin seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure as a result of HHI's withholding of payment from the order and receipt of two hundred forty four thousand dollars ($244,000) in lures. As set forth below, the undisputed facts clearly demonstrate that Panther Martin is entitled to summary judgment on this claim.

The following facts are undisputed. HHI ordered and received approximately two hundred forty four thousand dollars ($244,000) worth of Panther Martin lures. (Defs.' 56.1 ¶ 91.) HII placed approximately two hundred forty four thousand dollars ($244,000) in an interest bearing escrow account, which now totals at least two hundred sixty five thousand dollars ($265,000.00). (Defs.' 56.1 ¶ 92.) Plaintiff admits that, after it became clear that the parties were not going to find a commercial resolution to this case, HHI decided to place the amount represented by the remaining invoices into an interest bearing escrow account. (Hoge Aff. ¶ 376-90.)

Under the New York Uniform Commercial Code ("N.Y. UCC") an aggrieved seller may recover the contract price for goods sold and delivered. Specifically, the UCC provides that:

> (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages. . . the price

> (a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer.

*See* N.Y. U.C.C. § 2-709(a) (McKinney 1993); *see also A.F.L. Falck, S.p.A v. E.A. Karry Co.,* 639 F. Supp. 314, 322 (S.D.N.Y 1986) (granting summary judgment where seller sold and delivered tubular steel to buyer for agreed price; seller's performance was

complete on delivery and buyer's acceptance of goods entitled seller to the agreed upon price.)

N.Y. U.C.C. 2-606(1)(b) provides that goods are deemed accepted when the buyer "(b) fails to make an effective rejection (subsection (1) of Section 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them."

New York law further provides that "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) (citing C.P.L.R. §§ 5001 and 5002). "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract. . . ." C.P.L.R. § 5001(a). The C.P.L.R. further provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed. . . ." C.P.L.R. § 5001(b).

HHI has admitted that it ordered and accepted the delivery of two hundred and forty four thousand ($244,000) in lures from Panther Martin. The August 4, 2005 email from Cecil Hoge to Thomas Cho and John Hoge indicates to the Court that HHI intended to use this withholding of payment as leverage in reaching a settlement. (Nahum Decl. ¶ 23) ("[W]e will be putting into escrow all future payments to Lelio. The amount that will be held in escrow will total approximately $244,000 of future payments. . . .We can imagine that Lelio will not be happy with this action. It is our hope this will cause Lelio to negotiate quickly a fair settlement for both sides.") Such litigation gamesmanship does not provide a legal ground for withholding payment. In short, HHI has failed to put forth any legal or factual basis to oppose summary

judgment on this claim. Therefore, the Court holds that Panther Martin is entitled to entry of summary judgment on this claim, which includes the price of the lures and prejudgment interest as provided for in N.Y. C.P.L.R. 5001 *et seq.*

Defendants also seek certification for immediate entry of final judgment pursuant to Fed. R. Civ. P. 54(b). Fed. R. Civ. P. 54(b) provides that:

> When more than one claim for relief is presented in an action. . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment.

Rule 54(b) permits a certification of final judgment where "(1) there are multiple claims or parties, (2) at least one of the claims or the rights and liabilities of at least one party has been finally determined, and (3) 'there is no just reason for delay.'" *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 164-65 (2d Cir. 2005) (quoting Fed. R. Civ. P. 54 (b)). "Respect for the historic federal policy against piecemeal appeals requires that a Rule 54(b) certification not be granted routinely. The power should be used only in the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Grand River Enters. Six Nations Ltd*, 425 F.3d at 165; *see also Advanced Magnetics, v. Bayfront Partners,* 106 F.3d 11, 16 (2d Cir. 1997) ("[T]he court's power under Rule 54(b) to enter a final judgment before an entire case is concluded should be exercised

sparingly.") (internal quotation marks and citations omitted).

A court may find that "no just reason for delay" exists when a plaintiff might be prejudiced by a delay in recovering a monetary award. *Advanced Magnetics*, 106 F.3d at 16. The Court is mindful that "the court's power under Rule 54(b). . . . should be exercised sparingly," *Id.* (internal quotation marks and citations omitted); *see, e.g., Capital Distrib. Servs., v. Ducor Express Airlines, Inc.*, 462 F. Supp. 2d 354, 359 (E.D.N.Y. 2006) (holding that fear that "the properties' value will suffer decline in the future, from a market downturn" weighed in favor of certification of final judgment under Rule 54(b)); *U.S. v. Evseroff*, No. 00-CV-6029 (DGT), 2001 WL 1571881, at *9-*10 (E.D.N.Y. Nov. 6, 2001) (granting 54(b) certification where fear existed that defendant would hide assets to avoid paying a judgment, as evidenced by previous attempts to transfer assets to family members.); *Brandt v. Home Diagnostics, Inc.*, No. 01-CV-1889 (SRU), 2006 WL 1729268, at *1 (D. Conn. June 23, 2006) (regarding defendant estate which was granted summary judgment, entry of final judgment was found to be appropriate under 54(b) because it would allow executrix to finalize distribution of estate and avoid costs that would result from further delay); *cf. Gruner v. K.G. Components Inc.*, No. 1 C 50137, 2002 WL 1732925, at *1 (N.D. Ill. July 26, 2002) (denying 54(b) certification where delaying appeal would not cause it a severe daily financial loss from non-payment).

In the instant case, the Court has been provided with no evidence that, without the judgment, Panther Martin would suffer a severe financial loss, nor has Panther Martin articulated any other hardship or reason as to why a Rule 54(b) certification is necessary here. Accordingly, Panther Martin's motion for certification under Federal Rule of Procedure 54(b) is denied.

### 3. Defendants' Request for Summary Judgment Dismissing the Claims as to Akua

Defendants have moved for summary judgment as to all claims against Akua, the parent company of Panther Martin. Plaintiff argues, however, that Akua is the alter ego of its subsidiary, Panther Martin s.r.l.

"In some instances, the corporate relationship between a parent and its subsidiary [is] sufficiently close as to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995). "Under New York law, veil-piercing requires 'a two-part showing. . . . (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *Singapore Tong Teik PTE Ltd. v. Coppola*, No. 04-CV-3440, 2007 WL 2375796, at *3 (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997)). "Veil piercing determinations are fact-specific and are highly sensitive to 'the circumstances of each case.'" *Time Square Const., Inc. v. Mason Tenders Dist. Council*, No. 07 Civ. 7250 (SAS), 2008 WL 55116, at *4 (S.D.N.Y. Jan. 2, 2008) (citing *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)). "The trier of fact must look at the totality of the evidence to decide if the presumption of corporate independence is outweighed by the policy to protect those who conduct business with the corporation." *City Nat'l Bank of Florida v. Morgan Stanley DW, Inc.*, No. 05-

Civ-2739 (DLC) (JCF), 2007 WL 927428, at *4 (S.D.N.Y. Mar. 29, 2007) (citing *Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131, 139 (2d Cir. 1991)).

In analyzing whether or not the corporate veil should be pierced, courts consider the following factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,* 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)).

It is undisputed that Akua owns 99 percent of Panther Martin s.r.l. (Defs.' 56.1 ¶ 96.) Defendants argue that there is no domination which would provide for piercing the corporate veil. Defendants contend that Akua and Martin are completely separate entities. Defendants assert that Akua and Panther Martin do not share warehouses, operate separate businesses and operating budgets, file separate tax returns, maintain separate bank accounts, hold separate board meetings and

shareholder meetings, and have different employees. (Nahum Decl. ¶ 15.) Although plaintiff cites evidence to the contrary, there is no need to address this issue as plaintiff has failed to meet the second prong of the test for the reasons discussed below.

"The second prong encompasses the overarching goal of the veil-piercing doctrine, which is to prevent fraud or achieve equity." *Sahu v. Union Carbide Corp.*, No. Civ. 8825 (JFK), 2006 WL 3377577, at *6 (S.D.N.Y. Nov. 20, 2006) (denying summary judgment where fraud was not proven under second prong of NY veil piercing test). "To satisfy this prong the party seeking to pierce the veil must establish that the parent corporation misused the corporate form for its own ends to commit a fraud or avoid an obligation." *Id.* (citing *TNS Holdings Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339-40 (1998)); *see, e.g., JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366, 378 (S.D.N.Y. 2003) (holding that plaintiff had alleged a basis for piercing the corporate veil where the complaint alleged that two defendants "exercised. . . . complete domination to abuse the corporate form in a manner that resulted in injury to the plaintiff, namely by using assets for personal rather than corporate purposes and by placing assets beyond the reach of creditors"); *District Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 241-42 (S.D.N.Y. 2003) (holding that the plaintiff had stated claim for piercing the corporate veil where it "allege[d] that [defendant] ha[d] used his companies in an attempt to avoid the obligations that were imposed by [certain] arbitration awards"); *Accordia Northeast, Inc. v. Thesseus Int'l Asset Fund, N.V., Inc.,* 205 F. Supp. 2d 176, 182 (S.D.N.Y. 2002) (holding that plaintiff had stated a claim for piercing the corporate veil where defendants' deceptive practices

included "impermissibly commingl[ing premiums] with other funds" ); *Rolls-Royce Motor Cars, v. Schudroff*, 929 F. Supp. 117, 122 (S.D.N.Y.1996) (holding that the plaintiff had stated a claim for piercing the corporate veil where plaintiff alleged that the defendants had used their control over corporate entities to hide assets from creditors).

In the instant case, plaintiff does not cite a single example of defendants using any alleged domination to commit a fraud or a wrong against HHI. In other words, in its brief opposition to summary judgment as to Akua, plaintiff sets forth no evidence from the record, nor does it even allege, that Akua dominated Panther Martin s.r.l. in order to commit a fraud or other wrong against HHI. Given the complete absence of any evidence to satisfy the second prong of the above-referenced test, the Court grants the motion for summary judgment as to Akua and dismisses all claims against Akua.

### III. CONCLUSION

For the reasons set forth above, the Court (1) denies plaintiff's motion for summary judgment on the ground that defendants do not have standing under the 1979 Contract; (2) denies summary judgment to plaintiff on plaintiff's claims of trademark infringement, false designation of origin, misappropriation, unfair competition, and copyright infringement; and (3) denies summary judgment to plaintiff on defendants' counterclaims. The Court grants defendants' motion for summary judgment as to the claim for goods sold and received, but denies their request for certification under Fed. R. Civ. P. 54(b). The Court grants defendants' motion for summary judgment dismissing all claims as to Akua. The Court also denies defendants' motion for summary judgment as to

ownership of the Panther Martin mark and for trademark infringement. Finally, the motions to strike are denied in their entirety and requests for costs with respect to any motions are denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 31, 2008
Central Islip, New York

* * *

The attorneys for plaintiff are Andrew M. Danas and Ronald N. Cobert of Grove, Jaskiewicz and Cobert, 1730 M Street, N.W., Suite 400, Washington D.C. 20036 & Michael Siris, 21 Wimbledon Drive, Roslyn, New York 11576. The attorneys for defendants are Daniel M. Olasov, Nancy J. Mertzel, & Akiva M. Cohen of Thelen, Reid, Brown, Raysman & Steiner LLP, 875 Third Avenue, New York, NY 10002.